**Adam D. Ford** (*Pro Hac Vice Pending*)
Ford & Crane PLLC
150 W. Commonwealth Ave., Ste 204
Salt Lake City, Utah 84115
Telephone: 213.915.4291
Facsimile: 801.407.1770
adam.ford@fordcranelaw.com

Nevada Local Counsel:

**Jeffrey Whitehead** (NV Bar #3183)
**Gary Burnett** (NV Bar #7632)
Whitehead & Burnett
6980 O'Bannon Drive
Las Vegas, NV 89117
Telephone: 702.267.6500
Facsimile: 702.267.6262

*Counsel for Plaintiff Western Trails Charters & Tours LLC
d/b/a Salt Lake Express*

## UNITES STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WESTERN TRAILS CHARTERS & TOURS LLC, d/b/a SALT LAKE EXPRESS, An Idaho Limited Liability Company., | Case No. 2:23-CV-798-GMN-VCF |
| Plaintiffs, | **EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** |
| v. | |
| NEVADA TRANSPORTATION AUTHORITY, a division of the Nevada Department of Business and Industry, VAUGHN HARTUNG, in his official capacity as Chair of the Commissioners of the Nevada Transportation Authority, JOHN DOES 1-x. | |
| Defendants. | |

Plaintiff Western Trails Charters & Tours, LLC, doing business as Salt Lake Express, hereby move the court for a temporary restraining order and preliminary injunction against Defendant Nevada Transportation Authority ("NTA") and Vaughn Hartung ("Hartung"), and alleges as follows:

## NATURE OF THE ACTION

1.     The NTA has declared war on Salt Lake Express who now must seek the protection of the Federal Courts.

2.     The NTA has repeatedly asserted the position that any ticketing/transporting of a passenger between two locations in Nevada makes Salt Lake Express' Nevada operations subject to Nevada State regulation.

3.     Salt Lake Express has repeated informed the NTA that it is a Federally regulated interstate carrier running interstate routes and not subject to NTA oversight and authority.

4.     Salt Lake Express has spent years unsuccessfully trying to appease the NTA and to convince them that their redundant regulation was unnecessary and illegal.

5.     Last week, the NTA and Hartung decided to escalate matters. On Thursday, May 18, 2023, the NTA illegally seized a Salt Lake Express Sprinter van in Reno, leaving 20 passengers stranded along the route which ran through Truckee (CA), Reno, Sparks, Fernley, Fallon, Hawthorne Tonopah, Beatty, Death Valley (CA), Pahrump and Las Vegas.

6.     On Friday, May 19, 2023, the NTA and Hartung held a trial on the impound-related violation of operating a vehicle without State authority. The trial was held on six hours' notice to Salt Lake Express. The NTA and Hartung refused to take evidence of the interstate nature of the route, considering them irrelevant, and ignored legal arguments regarding Federal

regulatory preemption. The NTA and Hartung found Salt Lake Express guilty of violating

Nevada law and imposed a fine of $10,000 plus the costs of the illegal tow and storage.

7.     The loss of the vehicle, the trauma to the employee driver, the stranded

passengers, the constant threat of another impound seizure have combined to make the situation

volatile and dangerous.

8.     This Federal Court should grant temporary restraint, preliminary injunction, and

permanent injunction against the Commissioners, Hartung and all other NTA officers or

officials, from interfering in the lawful interstate commerce undertaken by Salt Lake Express.

9.     Specifically, the Court should maintain the status quo by restraining and ordering

the NTA and Hartung to:

   a. Return the seized vehicle to Salt Lake Express immediately and at no cost or

      charge to Salt Lake Express.

   b. Refrain from interfering with Salt Lake Express's operations on any regularly

      scheduled route with regularly scheduled stops outside of Nevada by not stopping

      or seizing Salt Lake Express vehicles running those interstate routes and not

      delaying or interfering with passengers traveling those interstate routes.

   c. Not retaliate against Salt Lake Express in any manner, including, but not limited

      to, taking any adverse action related to the charter bus authority held by Salt Lake

      Express or by interfering with their contracts and agreements with the Nevada

      Department of Transportation.

**OPERATIONS OF SALT LAKE EXPRESS ARE FEDERALLY REGULATED**

10.    Salt Lake Express is a federally regulated public carrier running transportation

routes in Washington, Arizona, Montana, California, Wyoming, Idaho, Utah and Nevada. A map

of Salt Lake Express' routes can be accessed at: https://saltlakeexpress.com/pickup-locations/route-map/.

11.     Salt Lake Express employs approximately 150 drivers running 45 Mercedes Sprinters, 25 minibuses, and 50 larger buses, all of which stop at over 100 locations. In addition to drivers, Salt Lake Express employs over 60 full and part time reservationists, 12 full time mechanics, 12 full time safety and training specialists, over 12 cleaners and a myriad of other part-time and/or contract employees. Overall, Salt Lake Express employs over 280 people across its traffic coverage map.

12.     Salt Lake Express vehicles travel over 40,000 miles per day, putting an average of 100,000 miles on each vehicle, each year. Due to the size and demand on the fleet, vehicles are not assigned to a specific region, but travel throughout all states as demand, accidents, and repair and maintenance activity requires.

13.     Salt Lake Express first began running a shuttle from Rexburg, Idaho to Salt Lake City in August of 1998 and has continually expanded it operations through the western United States since that date. It has never had any conflict or difficulty with the state regulating authority of any state it has operated in other than the state of Nevada.

14.     The Salt Lake Express Department of Transportation registration number is #524401.[1] a copy of Salt Lake Express' Certificate issued by the Department of Transportation authorizing it to operate in interstate commerce is attached hereto as Exhibit A (the "Federal Authority Certificate").

15.     The Federal Authority Certificate specifically states:

---

[1] Entering that registration number at the USDOT website https://safer.fmcsa.dot.gov/CompanySnapshot.aspx will show the current authorization status as "Authorized for Passenger".

> This Certificate authorizes regular-route transportation entirely in one State as a motor carrier of passengers if such intrastate transportation is provided on a route over which the carrier provides interstate transportation of passengers.

16.     This language in the Federal Authority Certificate is an echo of 49 USCS § 13902(b)(3), which states:

> (3) Intrastate transportation by interstate carriers. A motor carrier of passengers that is registered by the Secretary under subsection (a) is authorized to provide regular-route transportation entirely in one State as a motor carrier of passengers if such intrastate transportation is to be provided on a route over which the carrier provides interstate transportation of passengers.

17.     Pursuant to this Federal Authority Certificate, Salt Lake Express has been providing passenger service on interstate routes, including providing passengers intrastate transportation entirely in one state, for over 25 years throughout the West (including Nevada).

18.     Every route run by Salt Lake Express that travels in Nevada crosses state lines on its regularly scheduled service.

19.     As reflected in the public record at the above link in footnote 3, Salt Lake Express underwent 58 Federal vehicle inspections and 23 Federal driver inspections in the 24 months prior to the date of this filing.

20.     Out of service ratings received by Salt Lake Express are approximately half the national average for both vehicles and drivers, an extraordinary record. Salt Lake Express has a "Satisfactory" rating from the U.S. Department of Transportation, the highest rating available. They are widely respected and admired in the industry for the efficiency and effectiveness of their operations.

21.     The Federal Motor Carrier Safety Administration conducts random, full, on-site inspections regularly in Salt Lake Express' multiple maintenance shops. These are very tough

and thorough inspections and can happen at any time. Salt Lake Express is also subject to roadside inspections which are typically conducted at a state border's port of entry.

22.     If a Salt Lake Express driver is stopped by any state's highway patrol for any reason, they will generally do an inspection of the vehicle pursuant to Federal Motor Carrier Safety Regulations as well as check the drivers' federally mandated paperwork, including his log book.

23.     Salt Lake Express is also required to submit every vehicle in its fleet to a safety inspection by the Federal Motor Carrier Safety Administration. These inspections are very detailed and cover every facet of the vehicle's operational and safety status.

24.     Every Salt Lake Express driver goes through a Federally mandated rigorous hiring process, including background checks, drug testing, and licensing by the Federal Motor Carrier Safety Administration (FMCSA).

25.     Every regulation the NTA seeks to impose on Salt Lake Express is duplicative of these Federal regulations and requirements, with which Salt Lake Express is in full compliance.

26.     The NTA has asserted that it retains the right to regulate safety issues under 49 U.S.C. § 14501(c)(2)(A)—but this only pertains to the transport of property, not passengers.

27.     Salt Lake Express does not object to Nevada regulating is service as it pertains to general, non-Federally regulated matters such as speed limits, size and weight limits, permissible blood-alcohol levels, or unique location-specific requirements such as a requirement to carry tire chains on certain routes during certain months.

28.     Salt Lake Express does object to duplicative and unnecessary regulation such has having to register and safety inspect vehicles by both Federal and State authorities and having drivers be licensed and background-checked by both Federal and State authorities.

## NEVADA CHARTER SERVICE NOT AT ISSUE

29.     Salt Lake Express operates a charter bus service in Nevada pursuant to Certificate of Public Convenience and Necessity ("CPCN") 2238.

30.     This charter bus service is not in dispute with the NTA and is not implicated in this civil action, except to the extent that the NTA may take punitive or reactionary adverse action against SALT LAKE Express due to this civil action.

## OTHER NEVADA INTERSTATE ROUTES HAVE BEEN IGNORED

31.     Salt Lake Express has been running passenger routes along I-15 from St. George, Utah to Las Vegas, Nevada (the "I-15 Route") and along I-80 from Salt Lake City to Elko to Reno (the "I-80 Route"), Nevada pursuant to its Federal Authority Certificate for many years, without any state-level regulation in Nevada, without any oversite or interference by the NTA. These interstate routes and service are not implicated in this civil action, except to the extent that the NTA and/or Hartung may take punitive or reactionary adverse action against Salt Lake Express due to this civil action.

32.     In spite of the consistent legal position asserted by the NTA that the transportation of passengers from one point in Nevada to a second point in Nevada is intrastate transportation subject to their jurisdiction, regulation and control, regardless of whether the route is interstate, the NTA and Hartung have not as of yet interfered in the operations of the I-15 Route or the I-80 Route.

33.     Salt Lake Express has informed the NTA multiple times that both the I-15 Route and the I-80 Route do pick up and drop off passengers on trips that take place entirely within Nevada (such as from Winnemucca to Reno or Mesquite to Las Vegas).

## LAS VEGAS – RENO ROUTE

34.     After years of no bus service between Las Vegas and Reno, and recognizing the need of the public for such a service, the Nevada Department of Transportation solicited bids, offering to subsidize a transportation carrier who would run the route. Salt Lake Express was awarded the contract.

35.     Salt Lake Express began carrying passengers daily in both directions (two separate routes, with separate ticket codes) on the St. George-Reno-Las Vegas corridor on March 15, 2021.

36.     The Nevada operations are not independent of Salt Lake Express' overarching interstate operations. Every single route operated by Salt Lake Express crosses state lines.

37.     Over 90% of the tickets sold on Salt Lake Express vehicles for passengers traveling in Nevada are sold via a unified ticketing system which includes national carriers such as Greyhound. The vast majority of those passengers are traveling on tickets which began or will end (or both) outside the state of Nevada. For these passengers, Salt Lake Express is just an interim step or a final leg of a longer journey.

38.     On the first opening day of the new St. George-Reno-Las Vegas service, the NTA issued a citation to the Salt Lake Express driver leaving Reno for Las Vegas for operating the vehicle without authority and without having the vehicle pass a Nevada state inspection (Citation no. 23151).

39.     Salt Lake Express informed the NTA that the two routes were interstate routes, originating or terminating in St. George Utah, going through Las Vegas, and originating or terminating in Reno.

40.     The NTA informed Salt Lake Express that they would be regulating the service from Las Vegas to Reno, regardless of where it originated or terminated and that it considered all passenger traffic between points in Nevada to be intrastate and subject to NTA regulation and control.

41.     The NTA informed Salt Lake Express that it would begin impounding Salt Lake Express vehicles if they did not submit to Nevada state regulation and follow the instructions of the NTA to request authority from the NTA to operate in the state.

42.      On the second day of service, March 16, 2021, the NTA issued another citation to the Salt Lake Express driver leaving Reno for Las Vegas for operating the vehicle without authority and without having the vehicle pass a Nevada state inspection (Citation no. 22331).

43.     NTA reiterated its threat to impound vehicles if Salt Lake Express did not submit to Nevada state regulation.

44.     On that same day, March 16, 2021, Salt Lake Express submitted an application for a Nevada CPCN to cover the regularly scheduled service in both directions between Las Vegas and Reno.

45.     On March 17, 2021, Salt Lake Express, via letter from its owner Jacob Price, under threat of the seizure of the company's vehicles, requested interim authority from the NTA to operate the Las Vegas-Reno routes.

46.     On March 18, 2021, the NTA granted Salt Lake Express CPCN 1144, attached hereto as Exhibit B, authorizing them to operate the Reno-Las Vegas routes on an interim basis, with a restriction of seven "livery limousines".

47.     The NTA continued to request items related to Salt Lake Express' non-interim application for a CPCN governing the Reno-Las Vegas route, and satisfied the NTA with all requested items for the non-interim application on March 10, 2022.[2]

48.     The interim authority granted by the NTA to Salt Lake Express was added to the agenda of the General Session of the NTA held on February 12, 2023. Salt Lake Express was not aware they were on the agenda and did not appear.

49.     The NTA apparently has consistently sent notices to the Salt Lake Express' St. George location, which is only as vehicle cleaning, maintenance, and repair location instead of sending notices to Rexburg Idaho where Salt Lake Express is headquartered.

50.     Counsel to Salt Lake Express has also repeatedly requested that notice be provided to him of any issues, hearing dates, or agenda items relating to Salt Lake Express, but no notice was provided of the February 12, 2023 NTA General Session.

51.     On March 16, 2023, the NTA issued citations to the Salt Lake express driver on duty in Reno, NV for (i) driving without a NTA issued driver permit, (ii) not passing the NTA mandated state drug test, (iii) operating a vehicle without display of the (interim) CPCN number, and (iv) driving a vehicle that had not passed inspection by the NTA (Citations 24760, 24765 and 24766).

52.     The NTA and Hartung noticed a hearing on April 20, 2023 for an order to show cause why Salt Lake Express' interim authority under CPCN 1144 should not be revoked. Notice of this hearing was emailed by the NTA to counsel for Salt Lake Express as had previously been

---

[2] A series of complications account for the year delay, including the NTA rejecting fingerprints taken by the St. George Utah police, the NTA losing fingerprints sent from Rexburg, ID (necessitating a Salt Lake Express employee having to fly to Las Vegas to provide prints), and the NTA rejecting a personal check written for the fee and sending it back by mail.

requested. Notice was also sent by registered mail to the Rexburg Idaho headquarters of Salt

Lake Express. Salt Lake Express, with counsel, appeared telephonically at the hearing held on

April 20, 2023.

53.     The discussion at the hearing centered around the difficulty of using only vehicles

licensed by the state of Nevada on the Reno-Las Vegas portion of the routes run in Nevada and

the difficulty of licensing all substitute drivers that might be needed to cover for the few drivers

typically assigned to the Reno-Las Vegas portion of the interstate routes.

54.     The NTA and Hartung were unmoved and insisted on full compliance with

Nevada rules and regulations whenever transporting a passenger from any point in Nevada to any

other point in Nevada, regardless of the route.

55.     The NTA and Hartung further informed Salt Lake Express at the April 20, 2023

hearing that they intended to perform an unannounced inspection of records mandated by

Nevada law at the headquarters of Salt Lake Express in Rexburg, Idaho—with all costs of food,

hotel and travel to be passed through to Salt Lake Express.

56.     On April 21, 2023 another ticket for failure to comply with NTA regulatory

requirements was issued to a Salt Lake Express driver on duty in Reno (Citation no. 24779).

57.     The three March 16 citations were set for hearing by the NTA on April 26, 2023.

No notice was received by Salt Lake Express or their counsel. The hearing set for April 26 was

not mentioned at the April 20 hearing at which Salt Lake Express and counsel appeared. Not

knowing about the hearing on April 26, no one from Salt Lake Express appeared. The NTA

adjourned the March 16 citations to a hearing date on May 10, 2023, the date set by the NTA as

the date for hearing on the new April 21 citation issued to Salt Lake Express.

58.     NTA claims it sent notice of the May 10, 2023 hearing on the three March 16 citations and the April 21 citation to Salt Lake Express on April 27, 2023. Salt Lake Express was not emailed or called regarding the hearing. Counsel was not noticed as had been requested.

59.     If notice of the May 10 hearing was received at Salt Lake Express offices in Rexburg, the correct parties at Salt Lake Express were not informed of the hearing by whomever received the notice. No one from Salt Lake Express appeared at the May 10 hearing set to review the three March 16 citations and the April 21 citation.

### NTA ESCALATES THE CONFLICT

60.     After Salt Lake Express did not appear at the May 10, 2023 hearing, Hartung as Chairman of the NTA, issued an Emergency Order of Summary Suspension, attached hereto as Exhibit C. A hearing on the Emergency Order of Summary Suspension was scheduled on May 18, 2023.

61.     The Emergency Order of Summary Suspension, including the notice of the May 18 hearing, was emailed to Salt Lake Express and their counsel on May 10, 2023. This was the first they learned of the missed hearings on April 26 and earlier on the day of May 10.

62.     On May 11, 2023, Salt Lake Express unveiled long-planned new route services, attached as Exhibit D, extending the Reno route to the north to service Truckee California and adding a stop in Death Valley California between stops in Beatty and Pahrump Nevada.

63.     On May 11 or 12, 2023 Patricia Erickson, administrative attorney at the NTA, was informed of the new route stops added, informed of Salt Lake Express' position that interstate routes were not subject to Nevada state regulation, and told that Salt Lake Express would comply with the Emergency Order of Summary Suspension by not running any routes subject to the NTA's jurisdiction and would like to withdraw its March 16, 2021 application for

a CPCN to cover the regularly scheduled service in both directions between Las Vegas and Reno.

64.    On May 15, 2023, Patricia Erickson, administrative attorney at the NTA, asked if Salt Lake Express would be appearing in person or via Webex remote conferencing. Counsel to Salt Lake Express informed the NTA that they would appear in person at the May 18 hearing.

65.    On May 16, 2023, Ms. Erickson informed counsel to Salt Lake Express that he would not be permitted to appear on behalf of his client as he was not an attorney licensed to practice law in Nevada, misstating the requirements of NAC 706.3941(2) (which does not require a party be an attorney to appear before the commission and misconstruing the requirement to associate with local counsel for a requirement for local counsel to appear at every hearing in person). This in spite of counsel appearing before the NTA on behalf of Salt Lake Express many times over the previous three to four years.

66.    Without time to coordinate with local counsel, having received the demand that local counsel be present only 48 hours before the hearing, on May 17, 2023 Salt Lake Express requested an adjournment of the May 18 hearing on the Emergency Order of Summary Suspension.

67.    On May 17, 2023 at approximately 4:00 p.m. P.S.T. in Reno, NV the NTA escalated matters by seizing and impounding a Salt Lake Express van, stranding 20 passengers along the route between Reno and Las Vegas.

68.    At 5:32 P.M. M.S.T. on May 17, 2023, Salt Lake Express was instructed by the NTA to appear remotely at the May 18 hearing and request an adjournment at that time.

69.    By email sent at 9:49 A.M. on May 18, 2023, Salt Lake Express and their counsel were informed by the NTA that the hearing on the Salt Lake Express vehicle that was impounded

the previous day would be held directly after the hearing on the Emergency Order of Summary Suspension that same afternoon.

70.     At the hearing on the Emergency Order of Summary Suspension on May 18, 2023, Chairman Hartung refused to allow counsel to Salt Lake Express speak, forcing Salt Lake Express to navigate the hearing without the benefit of counsel.

71.     In the end, the hearing on the Emergency Order of Summary Suspension was adjourned without date, still in force.

72.     At the hearing on the impounding of the Salt Lake Express vehicle, Commissioner Dawn Gibbons refused to take evidence regarding the interstate nature of the new Las Vegas-Death Valley-Reno-Truckee regularly scheduled service, and rejected legal arguments based on Federal statute and relevant case law. Commissioner Gibbons ruled that by carrying passengers from one point in Nevada to another point in Nevada, Salt Lake Express was engaged in intrastate transportation of passengers subject to Nevada State regulations and rules. Commissioner Gibbons issued fine in the amount of $10,000 plus all towing and storage fees.

## WHY DOESN'T SALT LAKE EXPRESS JUST SUBMIT TO NEVADA REGULATION?

73.     In short, because Salt Lake Express has seven-state operations with four border crossings on six routes into Nevada, segregating and isolating its Nevada regularly scheduled operations and making those isolated operations compliant with Nevada state rules and regulations has proved functionally impossible.

74.     Salt Lake Express does not have an office in Nevada. Salt Lake Express does not maintain a repair or cleaning facility in Nevada.

75. Every vehicle operated by Salt Lake Express has passed required Federal safety inspections and in maintained to continue to comply with all Federal regulations.

76. All Salt Lake Express vehicles must travel to Utah or Idaho for repair work.

77. When a vehicle needs an engine rebuilt or windshield replaced (etc.), it is pulled out of service, put into a shop, typically in St. George or Salt Lake City, Utah, and another vehicle replaces it from the fleet.

78. Salt Lake Express drivers have all completed Federal background checks and are licensed by the U.S. Department of Transportation (DOT) to provide commercial passenger service on interstate routes.

79. When a driver takes personal or medical leave, Salt Lake Express replaces that driver with another driver who has already been approved and licensed by the U.S. DOT.

80. Running a large interstate operation of interchangeable vehicles and drivers makes it impossible to comply with the unique rules and regulations the NTA seeks to impose.

81. No other state has attempted to regulate Salt Lake Express in the way NTA seeks to do.

82. Salt Lake Express' operations in Nevada mirror its operations in other states—there is nothing unique about its intrastate transportation of passengers in Nevada on its interstate routes.

83. In spite of its clear and consistent legal position that it is not subject to Nevada state regulation beyond non-overlapping safety rules, Salt Lake Express has put great effort into appeasing the NTA. The recent escalation of impounding a vehicle, literally stranding 20 passengers in Reno and along the route to Las Vegas, means that Salt Lake Express can no

longer appease NTA's false paradigm of intrastate transportation of passengers in Nevada on interstate routes subjects Salt Lake Express' Nevada operation to Nevada state law.

84.     For all these reasons, Salt Lake Express prays the Court for relief as follows:

## ARGUMENT

### I.     Legal Standard.

Rule 65 of the Federal Rules of Civil Procedure empowers a court to issue a preliminary injunction when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. "Injunctive relief is an extraordinary remedy, and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted."[3] "The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment."[4]

This Court has recognized that "[i]njunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted."[5] The following elements are to be considered in determining whether to issue a preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships;

---

[3] Shelton v. Nat'l Collegiate Athletic Assoc., 539 F.2d 1197, 1199 (9th Cir. 1976).
[4] Estes v. Gaston, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); see also Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).
[5] Rosenberger v. Wells Fargo Home Mortg., 2015 U.S. Dist. LEXIS 163584, *3-4, 2015 WL 8160360, quoting Shelton, supra, 539 F.2d at 1199.

and (4) advancement of the public interest.[6] The party seeking the injunction carries the burden of persuasion with regard to each element.[7]

      This Court has also recognized that it should consider the "serious question and sliding scale test."[8] "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."[9] "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest."[10]

### A. Likelihood of Success on the Merits.

      Salt Lake Express seeks only to do what it has done for over 25 years in seven western States, to do exactly what it is authorized to do under its Federal Authority Certificate and exactly what it is authorized to do by Federal law at 49 USCS § 13902(b)(3): undertake "regular-route transportation entirely in one State [Nevada] . . . on a route over which [it] provides interstate transportation of passengers."

      Salt Lake Express is likely to succeed in this action because the position of the NTA— that it may regulate any operation that picks up and drops off passengers in the state of Nevada— is clearly rejected by statute and relevant case law.

      A recent order of this District Court addressed the issue of the NTA seeking to regulate what were claimed to be interstate routes. In Sierra Nev. Transp., Inc. v. Nev. Transp. Auth., No. 3:21-cv-00358-LRH-CLB, 2022 U.S. Dist. LEXIS 89309 (D. Nev. May 18, 2022) this Court

---

[6] Id. (citing Winter v. N.R.D.C., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).
[7] Id.
[8] Id. (citing Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011)).
[9] Id. (quoting Cottrell at 1131).
[10] Id. (quoting Cottrell at 1135).

examined three types of trips in and out of the Reno airport: "(1) airline crews scheduled through a company in New York; (2) out-of-state business and vacation travelers booked by travel agents and other third-party companies; and (3) trips prearranged and paid for in advance directly by the passenger."

The Court concluded that the transportation of airline crews back and forth from the airport to their hotel was a part of interstate commerce and not subject to the NTA's jurisdiction. The NTA conceded that it would "not enforce its laws against [plaintiff's] trips that involved flight crews and the matter was thereby made moot. Id. at 15.

The Court further concluded that out-of-state travelers and their agents who booked reservations for transport across state lines, but when the actual transportation occurred entirely within the state of Nevada, was not enough of a transaction in interstate commerce to make the carrier exempt from state regulation. If the only interstate transaction is the booking, it is not enough for the transportation provider to escape local regulation. The fact that the carrier occasionally transported passengers out of Nevada to the California side of Lake Tahoe was also not enough to convince the Court to consider the entire operation interstate.

The facts in the present case differ significantly from the latter analysis. The services provided by Sierra Nevada Transportation (SNT) was not regularly scheduled and did not typically cross state lines. The company was based in Reno. There is no Federal statute directly on point providing cover to the local airport transportation operation as none of the routes provided by SNT were interstate routes.

In contrast, every single route run by Salt Lake Express crosses state lines, every single time, as part of its regularly scheduled service.

Another case, more closely on point, was decided by the Colorado District Court in 2007, E. W. Resort Transp., LLC v. Binz, 494 F. Supp. 2d 1197 (D. Colo. 2007). In deciding cross motions for summary judgment, the Colorado court had to determine if the Colorado equivalent of the NTA could regulate rates on an interstate route. The court held that 49 U.S.C.S. § 13902(b)(3) allows carriers to offer purely intrastate transportation if such intrastate transportation is to be provided on a route over which the carrier provides interstate transportation.

For intrastate routes to qualify as interstate, "it is not enough for the carrier merely to offer interstate transportation on the route over which it conducts intrastate service. The interstate service must be active. . . the intrastate service may not operate independently of the interstate service, but instead must be conducted as a part of existing interstate service. . . the required interstate transportation must be an actual, regularly scheduled service, it must be bona fide and involve service in more than one State, and it must be substantial." Funbus Systems, Inc. -- Intrastate Operations -- Petition for Declaratory Order, 1988 Fed. Car. Cas. P37,536, Nos. MC-C-10917, MC-153325 (Sub-No. 2), MC-C-10943, 1988 WL 225255 at *2 (Decided August 11, 1988). See also Airporter of Colorado, Inc., v. I.C.C., 866 F.2d 1238, 1240-1241 (10th Cir. 1989).

Salt Lake Express's interstate service is active. Service began service on the Las Vegas-Reno route in 2021 by continuing its route coming out of St. George Utah. Only after being harassed and threatened by the NTA did they submit for interim authority to operate under Nevada state law, and only to prevent the threatened seizure of their vehicles. Later Salt Lake Express gave the Reno-to-Las Vegas and Las Vegas-to-Reno routes their own route numbers

(effectively making them separate routes within the web of Salt Lake Express' interstate operations throughout the western United States).

The Nevada operations are not independent of the larger operation. Over 90% of the tickets sold on Salt Lake Express vehicles for passengers traveling in Nevada are sold via a unified ticketing system which includes national carriers such as Greyhound. The vast majority of those passengers are traveling on tickets which began or will end (or both) outside the state of Nevada. For these passengers, Salt Lake Express is just an interim step or a final leg of a longer journey.

The Salt Lake Express fleet is interchangeable and vehicles are swapped in and out according to demand for size, maintenance schedules, and unplanned repair work as needed. The NTA demand that only the same 7 vehicles run the Nevada-related routes. This has proven impossible due to the integrated nature of Salt Lake Express's operations.

The interstate routes are not theoretical, but actual and regularly scheduled. The interstate routes are bona fide. Road passengers in the U.S. purchase tickets on individual carrier's branded websites through a unified ticketing system called the Transcor Data Services Ticket Master Pro. This is the back-end system which allows all road carriers in the US such as Greyhound and Salt Lake Express to sell one ticket to a passenger to transit across multiple systems to their final destination. The addition of the Truckee and Death Valley stops on the Salt Lake Express Las Vegas-Reno routes was made active on May 11, 2023. The NTA, fully aware of the active interstate route, seized a Salt Lake Express Vehicle on May 17, 2023. Due to the recent nature of the new stops, no passengers had been picked up or dropped off yet at the new locations, but the route is live and real and tickets are being purchased for future travel on those routes.

In addition, the Court should not examine just this one route in isolation, but consider that many passengers come to be on this route coming off of Salt Lake Express's services into Las Vegas from St. George Utah or into Reno coming from Salt Lake City, Utah. 90% of the tickets between Reno and Las Vegas are sold by other interstate carriers such as Greyhound, making it highly likely that the passengers are coming into Salt Lake Express's services from a longer previous journey.

Therefore, Salt Lake Express estimates that only a small percentage, less than 20%, of its ticketed passengers on the Reno-Las Vegas service were not crossing state lines on their journey. Today, due to the stops in Truckee and Death Valley, every passenger crosses state lines for a regularly scheduled stop.

### B.   Plaintiff Is and will Continue to Be Subjected to Irreparable Harm.

The seizure and impound of the van belonging to Salt Lake Express in Reno on May 17, 2022 was embarrassing and caused the company to commit the unpardonable sin for a public carrier—it left passengers stranded with no alternative way to help them. The closest replacement bus was in Salt Lake City, a drive of over seven hours away. It too would have been be subject to seizure by the NTA as it hadn't been inspected and approved by the state regulators.

If a carrier obtains a reputation for failing to deliver its passengers to their destinations according to the tickets they purchased, they will lose that customer very quickly. The damage to Salt Lake Express's reputation suffered a major blow last week. Enough such blows, especially if the matter were to be covered by the press, which is more likely if the incident was repeated, could kill the company.

In addition, the harm to the many stranded passengers is significant and likely not calculatable. What is missing your child's final high school baseball game worth? How does one

calculate damages for not making it home on your weekend off work this month to see your wife and children. The riders on Salt Lake Express are not economically advantaged. If they had cars, they would most likely drive them. They are going to places like Battle Mountain or Beatty, typically for work or to see loved ones. The harm 20 such individuals suffered when the NTA impounded the vehicle last week is irreparable. Such an event should not be allowed to be repeated.

      **C.  <u>Balance of Hardships Weighs in Favor of Plaintiff</u>.**

There is no hardship to the NTA should the injunction issue. There is no safety issue as all operations are fully compliant with Federal safety regulations and will remain subject to them going forward. Salt Lake Express will simply operate peacefully and safely the same way it does in six other states.

The harm to Salt Lake Express should the injunction not issue is great. From losing vehicles to stranding passengers to loss of revenue, all the harm falls on Salt Lake Express. Plaintiff simply seeks to have the status quo maintained during the pendency of the Court's review of the matter.

      **D.  <u>Public Policy Favors Injunction</u>.**

The NTA has repeatedly threatened to impound vehicles unless Salt Lake Express conceded that they were subject to state regulation and fully complied with those state regulations. Salt Lake Express tried to appease the NTA but has failed. Last week the NTA impounded a vehicle that had just crossed the border from California, was heading through Nevada to California for an additional stop in Death Valley, before terminating its route in Las Vegas. The impound stranded 20 passengers along the route.

It cannot be in the public interest to deny thousands of Americans the option of safe efficient bus travel options across Nevada while this Court considers whether Federal Law preempts state regulation in this instance.

### E.  **Maintenance of Status Quo.**

Specifically, Plaintiff asks the Court to maintain the status quo by restraining and ordering the NTA and Hartung to:

a.  Return the seized vehicle to Salt Lake Express immediately and at no cost or charge to Salt Lake Express.

b.  Refrain from interfering with Salt Lake Express's operations on any regularly scheduled route with regularly scheduled stops outside of Nevada by not stopping or seizing Salt Lake Express vehicles running those interstate routes and not delaying or interfering with passengers traveling those interstate routes.

c.  Not retaliate against Salt Lake Express in any manner, including, but not limited to, taking any adverse action related to the Nevada charter bus authority held by Salt Lake Express or by interfering with their contracts and agreements with the Nevada Department of Transportation.

This motion and the underlying complaint are verified by Plaintiff in accordance with Rule 65(b)(1)(A) of the Federal Rules of Civil Procedure.

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

Signed at Salt Lake City, Utah on May 24, 2023.

/s/ Jacob Price
Managing member of Plaintiff
Western Trails Charters & Tours
LLC d/b/a Salt Lake Express
(Signed electronically with
permission received via email)

DATED this 24th day of May, 2023.

/s/ Jeffrey Whitehead
Jeffrey Whitehead (NV Bar #3183)
Gary Burnett (NV Bar #7632)
WHITEHEAD & BURNETT
6980 O'Bannon Drive
Las Vegas, NV 89117
Telephone: 702.267.6500
Facsimile: 702.267.6262

**Adam D. Ford** (*Pro Hac Vice Pending*)
FORD & CRANE PLLC
150 W. Commonwealth Ave., Ste 204
Salt Lake City, Utah 84115
Telephone: 213.915.4291
Facsimile: 801.407.1770
adam.ford@fordcranelaw.com
*Counsel for Plaintiff Western Trails
Charters & Tours LLC d/b/a Salt Lake
Express*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, certify that on the 24th day of May, 2023, I caused a true and correct copy of the foregoing EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT to be filed with the Court electronically via CM/ECF, which caused notice to be served upon all e-filing counsel of record via the Court's Notice of Electronic Filing [NEF].

/s/ Jeffrey Whitehead