AARON D. FORD
Attorney General
LOUIS V. CSOKA (Bar No. 7667)
Senior Deputy Attorney General
MATTHEW FEELEY (Bar No. 13336)
Deputy Attorney General
State of Nevada
Office of the Attorney General
555 East Washington Ave., #3900
Las Vegas, Nevada 89101
(702) 486-3120 (phone)
(702) 486-3416 (fax)
E-mail: mfeeley@ag.nv.gov

*Attorneys for Defendants*
*Nevada Transportation Authority*
*and Vaughn Hartung*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WESTERN TRAILS CHARTERS & TOURS LLC, dba SALT LAKE EXPRESS, an Idaho Limited Liability Company,

Plaintiff,

v.

NEVADA TRANSPORTATION AUTHORITY, a Division of the Nevada Department of Business and Industry, VAUGHN HARTUNG in his official capacity as Chair of the Commissioners of the Nevada Transportation Authority, JOHN DOES 1-X,

Defendants.

Case No. 3:23-cv-00219-RCJ-CLB

**HEARING EXHIBIT LIST**

Defendants, pursuant to the Order of the Court (ECF No. 15), hereby provides this Exhibit List.

| | Document | Bates Number |
|---|---|---|
| 1 | Final Citation Order 23151 22331 23857 23858 22939 | 0001-0029 |
| 2 | Certified Mail Receipt | 0030-0031 |
| 3 | Emergency Suspension Order | 0032-0039 |

| | Document | Bates Number |
|---|---|---|
| 4 | Citation 24785 (6-7) I-4555 (5-18) | 0040-0092 |
| 5 | Salt Lake Express Website | 0093-0094 |
| 6 | Google Map of the Area | 0095-0096 |

DATED this 29th day of May, 2023.

AARON D. FORD
Attorney General

By: /s/ Matthew P. Feeley
LOUIS V. CSOKA (Bar No. 7667)
Senior Deputy Attorney General
MATTHEW FEELEY (Bar No. 13336)
Deputy Attorney General
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on May 29, 2023, I electronically filed the foregoing **HEARING EXHIBIT LIST** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

/s/ Danielle Wright
Danielle Wright, an employee of the
Office of the Nevada Attorney General

# EXHIBIT "1"

NTA 0001

BEFORE THE NEVADA TRANSPORTATION AUTHORITY

| | |
|---|---|
| In re Citations issued to Western Trails Charters & Tours LLC d/b/a St George Express, Salt Lake Express for the violations of NAC 706.360 (4 counts), NAC 706.379, NAC 706.381, NAC 706.311 (14 counts), NAC 706.354 (14 counts), NAC 706.285 (17 counts) and NAC 706.203 | Citation numbers 23151, 22331, 23857, 23858 and 22939 |

At a general session of the Nevada Transportation Authority held on May 25, 2023.

PRESENT: Chairman Vaughn Hartung
Commissioner Dawn Gibbons
Commissioner R. David Groover
Deputy Commissioner Jennifer DeRose

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

**Procedural History**:

NRS 706.151 establishes the Nevada Transportation Authority (Authority) has legal jurisdiction over this matter.

On March 15 and 16, 2021, the Nevada Transportation Authority enforcement investigators (Staff) issued citation numbers 23151 and 22331 to Western Trails Charters & Tours LLC d/b/a St. George Express, Salt Lake Express (Salt Lake Express).

Citation 23151 alleged the violations of:

1. NAC 706.360 - use of a vehicle beyond scope of authority, and
2. NAC 706.379 – inspection of vehicles – operated vehicle without inspection.

Citation 22331 alleged the violations of:

1. Nevada Administrative Code (NAC) 706.360 - use of a vehicle beyond scope of authority – operated a vehicle inconsistent with their CPCN – no per capita authority (3 counts), and,

2. NAC 706.381 by operation of a vehicle without being inspected by the Authority.

Subsequently, on June 10, 2022, Staff issued citations 23857, 23858 and 22939 to Salt Lake Express.

Citation 23857 alleged the violations of:

1. NAC 706.311 – uniform rates - by charging and collecting unsubstantiated fees outside of the file tariff (14 counts), and,
2. NAC 706.354 – charter orders – by failing to identify equipment to be used on orders for intrastate commerce (14 counts).

Citation 23858 alleged the violation of:

1. NAC 706.354 – advertising – by failing to include CPCN number on advertisement of invoices for Nevada customers (17 counts).

Citation 22939 alleged the violation of:

1. NAC 706.203 – maintenance of records – by failing to maintain proper records for vehicle maintenance files.

The Authority was informed these citations would be contested by the carrier. Therefore, a special hearing was set to commence on June 28, 2022. Due to counsel for Salt Lake Express' misunderstanding regarding the hearing process then in place at the Authority, the June 28th hearing was continued to July 26, 2022 and set to begin at 2:00 p.m.

On July 26, 2022, Jacob Price, the owner of the carrier, and counsel Adam Ford were present at the Authority hearing room at 2:00 p.m. Deputy Attorney General (DAG) Matthew P. Feeley, counsel for Authority Staff, was also present in the hearing room.

///

Counsel for the Respondent and counsel for Staff discussed the facts and issues, for over two and one half (2 ½) hours, before Commissioner George Assad – acting in his capacity as a Hearing Officer - entered the room. At this time, Commissioner Assad was informed that some of the citations would be resolved by negotiations while others would be continued for a hearing later.

DAG Feeley, then, requested citation 22331 as well as the accompanying report, prepared by Authority enforcement investigator Adam Teti, be admitted as State's Exhibit 1. Further, DAG Feeley requested citation 23151 as well as the accompanying report, prepared by Authority enforcement investigator William Schilling, be admitted as State's Exhibit 2. Counsel for the Respondent did not object to the admission of the citations and reports and informed Commissioner Assad that copies of the citations and reports had been provided and reviewed. Commissioner Assad admitted citation 22331 and report as State's Exhibit 1 and citation 23151 and report as State's Exhibit 2.[1]

Commissioner Assad reviewed the two reports and stated his understanding that the parties had reached a full stipulation regarding the two citations. DAG Feeley agreed a full stipulation had been reached. However, Respondent's counsel then informed Commissioner Assad that Respondent had stipulated "to a process."

At this response, Commissioner Assad asked Respondent's counsel whether there was a stipulation regarding the facts i.e., the carrier comes into Nevada and operates in Nevada by providing point to point transportation which is outside the scope of the carrier's authority. Counsel for Respondent replied, "not exactly" and stated Respondent was happy to resolve these two citations with the understanding that Respondent was not admitting to needing any authority from the NTA.

---

1 Subsequently, the Hearing Officer ordered citation 22331 and its report be marked/admitted as State's Exhibit 2 while citation 23151 and its report was marked/admitted as State's Exhibit 1.

Further, counsel stated the Respondent would like to submit a request for a waiver for any of the issues that are outside of Respondent's power to control. Counsel asserted that Respondent could not comply with Nevada's full regulatory scheme.

When Commissioner Assad asked, "why not" and noted the carrier was doing point to point transportation in Nevada, received a license and must operate within that authority, counsel for Respondent gave an example of why the carrier was asserting it could not comply with Nevada's full regulatory scheme. In counsel's example, somebody goes to the Greyhound bus website and purchases a ticket from Redding, California to Las Vegas, Nevada. The passenger rides Greyhound from Redding to Reno. At that point, Salt Lake Express provides the passenger transportation from Reno to Las Vegas, Nevada. According to counsel for the Respondent, the State of Nevada requested Salt Lake Express provide the transportation for that route and Salt Lake Express agreed to "take that route."

In Salt Lake Express' ticketing system, the point-to-point travel will be shown but the ticket will also show a "ticket charge" by Greyhound which Salt Lake Express does not control. This charge may or may not comply with Salt Lake Express established Authority tariffs. Moreover, the fare shown on a receipt does not necessarily reflect what Salt Lake Express received in payment. At the end of each month, there is a reconciliation process with Greyhound which results in payment to Salt Lake Express that, again, may or may not comply with its Authority tariffs.

Then, counsel for the Respondent asserted he did not want to admit any facts which could prejudice any future proceedings regarding the facts alleged in the citations and reports. At this point, DAG Feeley indicated he preferred to go forward with the contested hearing on the two citations which were earlier resolved by negotiations.

Counsel for the Respondent, again, stated "to the extent that [the Authority] can grant waivers [the Respondent] is willing to submit to the jurisdiction of the state of Nevada." "To the extent that [Respondent] can't get waivers [Respondent] can't operate. [Unless Respondent] can be regulated as an interstate carrier, it has to close" its operations. Therefore, counsel for the Respondent was unwilling to stipulate that the Respondent was acting outside of its authority. Counsel went on to say "if [Respondent] can resolve those tickets and pay those fines without making that stipulation [the Respondent] would be happy to do so."

After these statements, Commissioner Assad asked whether counsel for the Respondent was familiar with the opinion Sierra Nevada Transportation v. the NTA.[2] Counsel for the Respondent acknowledged he was familiar with the decision written by United States District Court for the District of Nevada Judge Hicks. Commissioner Assad explained his view that the opinion was on point regarding the arguments made by counsel for the Respondent. Respondent's counsel asserted that he didn't disagree with Judge Hicks' decision but didn't believe it applied to Salt Lake Express.

Commissioner Assad then quoted the language from the opinion,

> Still, trips for out-of-state business and vacation travelers booked by travel agents and other third-party companies - like Greyhound - and trips prearranged and paid for in advance directly by the passengers constitute **intra**state travel properly regulated by the NTA. The Court reaches this conclusion because neither of these services involve a contract with an interstate transportation provider to accommodate its employees. ... Rather, SNT (Southern Nevada Transportation) contracts with these individual travelers to pick them up in Nevada and drop them off in Nevada. And while these transactions may occur across state lines, the purely local use of the actual transportation does not constitute **inter**state commerce. ... Consequently, the Court finds that SNT's transportation services for individuals that are not airlines crews are wholly intrastate and the Court will dismiss this action.[3]

---

2 See 2022 WL 1569191.

3 Emphasis by Commissioner Assad.

Judge Assad then stated that he did not know how much clearer Judge Hicks could have been.

In response to this comment, counsel for Respondent stated he "was happy to comply with 100% of Judge Hick's order and that is not an issue for us." As counsel did not state anything further, Commissioner Assad indicated that a contested hearing could be conducted if counsel for the Respondent was not willing to stipulate to the violations alleged in the citations.

Counsel for the Respondent, again, requested a waiver of the things the Respondent could not comply with. He went on to state the Respondent,

> would like to comply [with] Nevada's laws in so far as it is possible for [the Respondent] to comply with Nevada's laws. It is not possible for [the Respondent] to comply 100% with Nevada's laws. So [the Respondent] can shut down business and tell the State of Nevada that recruited [the Respondent] to come drive this route that [the Authority] put [the Respondent] out of business or [the Respondent] can request a waiver and run it as compliant as is possible for [the Respondent] to run it.

When Commissioner Assad asked specifically which regulations counsel was requesting be waived, counsel for the Respondent identified the regulation requiring the vehicle, to be used to provide the transportation, be identified on the ticket when purchased. At this point, DAG Feeley interjected and indicated this was the basis for some of the alleged violations and he would rather go forward with the contested hearing.

Commissioner Assad agreed to continue the hearing to another date. However, when he learned the Respondent was still providing passenger transportation, Commissioner Assad stated he would enter an order suspending the operations because, in his opinion, the Respondent wanted to operate in an illegal manner.

When the hearing was going to be rescheduled to August 23, 2022, counsel for the Respondent indicated he would go forward with the hearing on this date because the Respondent would not be able to go back into business if it was suspended for that amount of time.

Authority Staff indicated they were available to complete the hearing on this date and the contested hearing began at approximately 4:55 p.m.

**Findings of Fact:**[4]

The violations alleged, in the five citations, arose from the Respondent's interaction with Authority Investigators on March 15 and 16, 2021 and, again, on April 21, 2022.

DAG Feeley, counsel for Staff, first called Adam Teti to testify. After Mr. Teti was sworn, he testified that he was a Supervisory Investigator at the Authority and had been employed by the Authority for six (6) years. Supervisory Investigator Teti prepared citation 22331and the report underlying the citation which had been admitted, at the beginning of the hearing, and was now identified as State's Exhibit 2.

Supervisory Investigator Teti testified he was advised that on March 16, 2021 Salt Lake Express would be loading passengers at level zero in terminal 1 of the McCarran International Airport (now known as Harry Reid International Airport). On that date, Supervisory Investigator Teti traveled to the airport where he observed a driver standing next to a vehicle – with St. Lake Express markings - containing three passengers. Supervisory Investigator Teti spoke with the driver who advised he was picking up the three passengers at the airport then driving to Pahrump where another passenger would be picked up and then onto Reno. When asked about the amount each passenger paid for the travel, the driver advised he did not know the amount; all he had were the receipts from Greyhound establishing payment by each of the three passengers. The driver acknowledged the fare had been paid by each passenger.

---

4 Any Finding of Fact that would be better deemed a Conclusion of Law or vice versa shall be so construed.

Supervisory Investigator Teti testified that on March 16, 2021, the Respondent did not have authority to charge a fee for the transportation of each passenger.[5] The existing authority, provided by Certificate of Public Convenience and Necessity (CPCN) 2238, was for charter bus transportation which required a fee for the use of the entire vehicle be charged and paid. Therefore, the vehicle at McCarren Airport was being used outside the scope of the authority provided by CPCN 2238 which violated NAC 706.360.[6]   Because there were three passengers on the bus and each was paying separately for the transportation, Supervisory Investigator Teti cited the Respondent for three violations of NAC 706.360.

Additionally, Supervisory Investigator Teti testified the Authority records established the vehicle present at the airport was not included in the fleet for CPCN 2238. As it was not in the fleet, it had never been inspected by the Authority. This resulted in the NAC 706.381 violation alleged in count 2 of citation. 22331.

On cross examination regarding the NAC 706.360 violations, Supervisory Investigator Teti testified that he could not see the exact fare paid by each passenger on the documents in Exhibit D of State Exhibit 2. However, he could read the word "fare" and an amount was next to that word. Further, even though the driver did not know the dollar amount paid for each ticket, the NAC 706.360 violations were based on the driver knowledge of payment to Greyhound.

During cross examination, Supervisory Investigator Teti explained, several times, that the three violations regarding the vehicle being used outside of its authority were based on the three individual fare payments.

---

[5]      On January 22, 2018, Western Trails Charters & Tours, LLC d/b/a St. George Express, Salt Lake Express was granted the authority to operate as a passenger carrier to provide **intrastate charter bus service** between points and places within the State of Nevada through Certificate of Public Convenience and Necessity (CPCN) number 2238.
[6]      On March 18, 2021, subsequent to the commission of the alleged violations on March 15 and 16, 2021, the company obtained the appropriate CPCN to charge per capita.

CPCN 2238 did not authorize the Respondent to accept individual i.e., per capita payment for passenger transportation; rather, a fare for the use of the entire vehicle was required to be charged and paid.

During cross-examination, Supervisory Investigator Teti acknowledged that he did not ask the driver if the vehicle was being used in "interstate" commerce. Nor did he know if the vehicle had come across a state line prior to its use in Las Vegas. Rather, Supervisory Investigator Teti testified the vehicle was being used in **intra**state commerce and bore markings that it belonged in the Nevada CPCN fleet. The Respondent had placed logos i.e., CPCN 2238 on the vehicle. However, the vehicle had not been entered into its fleet records, maintained by the Authority, for official operation. As the vehicle was not listed in the Respondent's fleet, it was not inspected before being placed into service.

In response to the further questions regarding the NAC 706.381 violation, Supervisory Investigator Teti testified that the fleet list associated with CPCN 2238, which was the only CPCN existing on March 16, 2021, was Exhibit B of State Exhibit 2. There was not any Mercedes Sprinter on the fleet list. Supervisory Investigator Teti also called the Authority and confirmed the Mercedes vehicle was not on the fleet list. Further, Exhibit B of State Exhibit 2 includes the vehicle make of all the vehicles associated with CPCN 2238. All, but one, of these vehicles was made by Motor Coach Industries. Review of the fleet list established the one different vehicle was made by Freightliner, not Mercedes.

DAG Feeley then called John Kong to testify. After Mr. Kong was sworn, he testified he was an investigator at the Authority and had been employed in that position for one- and one-half years. Part of his duties, as an investigator, was to complete operational inspections of certificated carriers.

Investigator Kong testified that he prepared citations 23857, 23858 and 22939 as well as the report underlying those citations. DAG Feeley moved for the admission of the citations and report as State's Exhibit 3 without objection. The hearing officer admitted those items as State's Exhibit 3.

Regarding citation 23857 and the fourteen alleged violations of NAC 706.311, Investigator Kong testified that during his operational inspection, which began in St. George, Utah, he requested copies of invoices and charter orders for intrastate commerce. After later receipt of the documents, Investigator Kong found fourteen (14) charges which were outside the Respondent's tariff. The documents reviewed by Investigator Kong were contained in his report as Exhibit "C" and began at page 21 of the report.[7] Investigator Kong explained that Exhibit "C" included three (3) fares which were for "interstate" commerce and he did not include those as violations of NAC 706.311.

Investigator Kong testified that the first intrastate travel began at the Las Vegas airport and travelled to Hawthorne, Nevada, found at p.25 of the report, was three hundred fifteen (315) miles. According to Respondent's tariff, found at p.69 of State's Exhibit 3, the amount that could be charged for three hundred fifteen (315) miles was between $74.00 and $79.00. The invoice associated with this travel showed the fee paid was $137.23 which included one (1) processing fee, two (2) airport accessing fees and two (2) fuel recovery fees. The carrier's tariff does not include processing, airport accessing or fuel recovery fees. The tariff only permits charging for the mileage of a one-way fare. After this testimony, counsel for the Respondent stipulated that each of the remaining thirteen invoices exhibited the same kind of facts.

7 The original report, admitted as State's Exhibit 3, did not include any page numbers. Based on Investigator Kong's testimony and reference to specific page number in his report, after the conclusion of the July 26, 2022 hearing, it was ordered that a copy of Investigator Kong's report, exhibiting the page numbers, was admitted as State's Exhibit "3A."

Investigator Kong then testified, regarding the fourteen (14) alleged violations of NAC 706.354, that the same invoices – found in Exhibit "C" of State's Exhibit 3 – did not identify the type of vehicle which would provide the noted transportation. Investigator Kong also testified that the fleet list, associated with CPCN 1144, contains six (6) vehicles. All, but one of the vehicles on the list, were Mercedes Sprinters; the different one was a Freightliner.

According to Investigator Kong these facts establish the Respondent could have identified the vehicle providing the passenger transportation but did not do so.[8] The six (6) vehicles provided intrastate transportation between Las Vegas and Reno including stops in between those cities. After this testimony, counsel for the Respondent stipulated the other thirteen (13) invoices did not identify the vehicle which provided the noted transportation.

Investigator Kong then testified that the same invoices, in Exhibit C, contained the logo for Salt Lake Express but failed to include CPCN 1144. Investigator Kong noted the boarding pass, located at p. 54 of State's Exhibit 3, and the invoice, located at p.53 of State's Exhibit 3, would be received by the purchasing passenger. Both documents were provided for intrastate transportation, one contained the Salt Lake Express logo and the other the printed name of Salt Lake Express. Therefore, the documents should have also included the CPCN number. The failure to include the CPCN number violated NRS 706.285. As Investigator Kong received invoice/boarding pass documents for seventeen (17) different trips, citation 23858 alleged seventeen (17) violations of NRS 706.285.

Investigator Kong testified the violations alleged in citations 35857, 23858 and 23859 arose from an operational inspection initially begun in St. George, Utah.

---

8 Subsequent to the issuance of citation 23151, on March 15, 2021, and citation 22331, on March 16, 2021, Respondent was given interim authority to provide special services and airport transfers and CPCN 1144 was issued on March 18, 2021.

This location was noted, in the Authority's database, as a domicile address for Salt Lake Express.

Prior to beginning the scheduled operational inspection on April 21, 2022, Gregory Hendricks – identified in the Authority's database as a contact for the carrier - informed Investigator Kong that all the driver and vehicle maintenance files would be available for his review in St. George. After this testimony, counsel for the Respondent agreed that all seventeen (17) invoice/boarding pass documents failed to include the CPCN number.

The operational inspection had to be continued to May 5, 2022.[9] Even though the Respondent had over a week to gather the vehicle maintenance files, many required documents were missing from the files. Specifically, Investigator Kong testified that in-house generated work orders and third-party repair documents related to other work orders were missing from the vehicle maintenance files. Based on these facts, citation 22939 was prepared alleging the failure to maintain proper records for vehicle maintenance files.

After the inspection was completed in Las Vegas, the missing records were ultimately provided to Investigator Kong approximately one and one half (1.5) months later.

During cross examination by the Respondent, Investigator Kong testified that all documents were supposed to be available for his review when he arrived at St. George. Investigator Kong knew the records might be in Rexburg and not in St. George. However, Mr. Hendricks had agreed to transfer the records to St. George. After arrival at St. George, Investigator Kong was required to wait for files to be sent by email. He reviewed each file as it became available. In four and one half (4.5) hours, he was only able to review four (4) driver files.

---

9 On April 21, 2022, neither the driver files nor the vehicle maintenance files were at the St. George address when Investigator Kong arrived. While driver files were being sent from the carrier's main office in Rexburg, Idaho to St. George by email, the process took so long that Investigator Kong was only able to review four (4) files in four and one half (4.5) hours on that date. Therefore, the completion of the operational inspection was scheduled for May 5, 2022 at the Authority's Las Vegas office. Redian Celaj, identified in the Authority's database as a contact person for the Respondent, agreed to bring the identified files to Las Vegas for the May 5, 2022 inspection.

Investigator Kong did not know if there was a requirement for the carrier to maintain records at the St. George location. Investigator Kong acknowledged the St. George location was noted to be an equipment point in the Authority's database. Investigator Kong testified that he did not have any problem inspecting vehicles at St. George only a problem with record inspection.

On cross examination, Investigator Kong testified that he believed the amounts, exhibited on the invoice/charter orders, were paid to Salt Lake Express based on the records provided by Mr. Celaj. Prior to review of these documents, Investigator Kong had explained, to Mr. Celaj, that he needed to review charter orders/invoices and what those documents were. Investigator Kong knew that Mr. Celaj was a supervisor for the Respondent and in charge of the equipment located at the St. George location.

Regarding the violation of NAC 706.354, Investigator Kong testified that Salt Lake Express was required to identify the vehicle, that would be used to provide the transportation, on the invoices/charter orders. Investigator Kong stated this was required when Salt Lake was acting pursuant to the special services authority given by CPCN 1144.

Investigator Kong also stated that the Respondent's CPCN was required to be exhibited on the invoice/charter order and receipt documentation received by a Nevada passenger for intrastate travel because it contained the Salt Lake Express logo and/or name; it was advertising. When counsel for the Respondent posed a hypothetical regarding a potential requirement for the inclusion of the CPCN number on a letter sent to a Nevada customer, Investigator Kong stated that was beyond his knowledge.

While Investigator Kong testified that he received an email from Mr. Hendricks, he did not have a copy of that email at the time of the hearing. Investigator Kong also testified that most of the relevant information was provided during a telephone conversation.

Cross examination then moved to the emails, which were Exhibit G, in Investigator Kong's report. Specifically, questions were asked regarding the email sent by Jacob Price on May 31, 2022. Investigator Kong acknowledged that Mr. Price was identified as an owner of Salt Lake Express and he did not contact Mr. Price because in his experience, it is difficult to connect with owners of carriers. Investigator Kong agreed that he was not surprised by the statement, in Mr. Price's May 31, 202 email, that "St. George is a pilot location for us and does not keep the files for the company." However, Investigator Kong was surprised by the email's statement that,

> [i]t is unrealistic to expect that receipts and files are kept in various locations throughout the company. They can be found at our admin offices in Idaho. Future inspections should be held at this location.

Investigator Kong testified that, while he was aware the records would be sent to the St. George location, he was surprised by this statement. During his telephone conversation with Mr. Hendricks, regarding the operational inspection, he was never told that the inspection should take place in Rexburg, Idaho. Moreover, Mr. Hendricks assured Investigator Kong that the files would be at the St. George location when Investigator Kong arrived there.

During cross examination, Investigator Kong testifying that he thought Jacob Price and Redian Celaj were being cooperative and getting him the information needed. Investigator Kong had no reason to believe that Salt Lake Express was hiding anything from him.

Regarding the violation of NAC 706.203, Investigator Kong testified he had no reason to believe that the records maintained in Idaho were not proper. When questioned regarding the principal domicile for the carrier, Investigator Kong explained that due to the location of the Respondent's vehicles in St. George it would be reasonable for him to request vehicle maintenance files at this location. Investigator Kong acknowledged that the tariff document, included in his report as Exhibit D, contained the address of 785 S. Railroad Ave., Rexburg ID.

Further, the "Audit" document from Holly Ivie, included in his report as part of Exhibit I, listed Jacob Price as "Operations" yet Investigator Kong did not contact Mr. Price. Investigator Kong testified that he believed he received the Ivie document, dated April 21, 2022 at 3:51 p.m., from Mr. Celaj in May 2021 during the Las Vegas office inspection.

The cross examination ended with Investigator Kong testifying that as he, ultimately, received all the required documents, he did not write any more citations for any other violation of NAC 706.203.

During redirect examination, Investigator Kong testified that the operational inspection was not a "surprise" inspection. Investigator Kong knew that the main office was in Rexburg. He contacted someone at the main office in Rexburg. He was told all the documents would be available to him upon his arrival at the St. George office. The email, included in his report, was not the full extent of his interactions with the carrier as he also had phone conversations with different persons at the carrier. Ultimately, Investigator Kong was told by two (2) different supervisors that the records he needed to review would be available at the St. George location so he went there to inspect the records.

Counsel for the Respondent then called Jacob Price to testify. After Mr. Price was sworn, he testified the carrier operates in eight (8) other states where passengers can be picked up and/or dropped off. Mr. Price asserted that his business was not subject to the same oversight in any other state as occurs in Nevada. Mr. Price believed he received his first CPCN, number 2238 which permitted charter transportation, from the Authority in 2016; this is when he began scheduled service in Nevada.

///

///

Mr. Price's testimony demonstrated his accurate understanding of the difference between charter bus authority, which requires the use of and payment for an entire vehicle, and "special services" and/or "airport transfer services" which permits the carrier to charge "per capita" for everyone who seeks to travel. However, throughout his testimony, Mr. Price chose to call "per capita" transportation "scheduled service" transportation which is not a designated type of authority or transportation.[10]

In 2021, when his company began to provide "scheduled service," Mr. Price did not contact the Authority because his company was already providing services inside and outside of Nevada. Mr. Price testified, beginning in 2016, there was a route where the driver, vehicle and travel originated in St. George, Utah and went to Las Vegas. This service made stops in Beaver Dam, Arizona, a couple of stops in Mesquite, Nevada and then a stop in Las Vegas. Mr. Price acknowledged that passengers were picked up in Mesquite who ended travel to Las Vegas and passengers who began travel in Las Vegas would end the travel in Mesquite, Nevada.

As the reason Mr. Price failed to contact the NTA in 2021, he testified that in either 2016 or 2017, he contacted the Authority regarding his inside Nevada transportation routes. Mr. Price could not remember who he spoke with but testified that he was initially told he needed specific authority for this transportation. Therefore, Mr. Price applied for "scheduled service" authority. Subsequently, Mr. Price was told he did not need to have specific authority for the inside Nevada trips and just went forward with the application for charter bus authority.

///

---

10 "Per capita" transportation is only permitted if a carrier has applied for and received a CPCN authorizing "special services" and/or "airport transfer services." A carrier with "special services" and/or "airport services," unlike a carrier with only charter bus authority, a fully regulated carrier.

Later, when a company providing passenger transportation between Las Vegas and Reno, Nevada and receiving federal funding for the route through NDOT went out of business, Mr. Price applied for this route to NDOT. When his company was awarded this service, no one at the Nevada Department of Transportation told him he needed to obtain a new charter for "scheduled service." Mr. Price testified that he began providing transportation, pursuant to this contract, on March 15, 2021 which is the date citation 23151 was issued.

On March 15, 2021 either Greg Hendricks or Redian Celaj contacted Mr. Price regarding the citation. He told whichever person he spoke with "we don't need authority continue with" the transportation. According to Mr. Price, because he hadn't needed the authority in 2016, his company didn't need the authority in 2021.

Mr. Price testified he would have learned about citation 22331, which was issued on March 16, 2021, in the same manner. A supervisor, either Mr. Hendricks or Mr. Celaj, contacted him regarding the fact the second citation was in the process of being issued. Mr. Price's reaction was to request contact information for someone at the Authority that he could speak with. Mr. Price could not remember whether he received an investigator's number or the Authority's number.

On March 17, 2021, Mr. Price applied for special services charter authority.[11] According to Mr. Price, he received an email on March 17, 2021 that the requested authority was granted. However, the official document permitting interim authority was dated March 18, 2021. Within several days, vehicles were inspected and drivers were permitted by the Authority.

When questioned about the violation of NAC 706.311, Mr. Price testified that the amount displayed on the boarding pass was the amount the passenger was charged. However, this might not be the amount of money Salt Lake Express would receive.

---

[11]     There is no authority for "special services charter" transportation.

When counsel for the Respondent asked about the Richard Harris' travel, Mr. Price admitted Salt Lake Express did receive the charged amount of $137.23.[12] Mr. Price acknowledged that Salt Lake Express received more fees than permitted by the Authority tariff. However, Mr. Price also testified that was not always the case regarding all the travel documents in the report because (1) other companies sell tickets through Salt Lake Express and (2) the document might only show a section of the travel completed.

Mr. Price testified that he did not believe the documents, in Exhibit "C" of State's Exhibit 3, were advertising even though he admitted he would need to review the Authority's rules regarding advertising. While Mr. Price testified all of Salt Lake Express' ticketing was done electronically, he admitted a website link would be sent to a customer which would enable the person to access the receipt associated with the travel. Mr. Price also admitted the Nevada CPCN was not included on the website that could be accessed. Mr. Price also testified the documents entitled "Transaction Successful" could be seen by the passenger.[13]

Regarding the failure to identify equipment used during transportation, Mr. Price testified it would be impossible to identify the vehicle which would provide the transportation when ticketed.

Mr. Price testified that Mr. Hendricks did not tell Mr. Price that he agreed to transfer records to St. George.[14] Mr. Price then testified that the records could be incomplete based upon which records needed to be reviewed.

---

[12]   See p. 25 of State's Exhibit 3. During cross examination, Mr. Price tried to back away from this testimony by testifying he could not know if this payment was received without investigating the entire ticket on a computer. After backing away from this testimony, Mr. Price testified that he could have provided accurate records establishing what Salt Lake Express actually received if that had been requested. However, Mr. Price did not provide those accurate records during the July 26, 2022 hearing.

[13]   Any of the documents which were generated by customer service would not be seen by a passenger.

[14]   Mr. Price did not testify whether he asked Mr. Hendricks if he had made this agreement.

For example, Salt Lake Express maintains driver files which are maintained in accordance with the federal regulations. Salt Lake Express also does not hand out their personnel files. Therefore, depending on what records are requested to be reviewed, the Respondent may or may not be able to provide the records even if they were specifically required pursuant to the Respondent's CPCN authority. Mr. Price ended the testimony on this issue by acknowledging he did not know what records were provided to Investigator Kong.

Mr. Price did not know anything about the April 21, 2022 inspection until citation 22939 was received sometime in May.

Subsequently, during cross examination, Mr. Price acknowledged that he provided testimony regarding the legal and factual basis of both citation 23151, issued on March 15, 2021, and citation 22331, issued on March 16, 2021. Counsel for Respondent stipulated that no additional facts would be established by testimony from the investigator who prepared citation 23151.

Further during cross examination, Mr. Price testified that he worked between the Rexburg and St. George locations and maintained supervisors at both locations. Mr. Price agreed that his tariff did not permit charging for any fees whether airport, processing, or fuel recovery. Mr. Price testified that Salt Lake Express could not always abide by the Nevada tariffs.

On redirect examination, Mr. Price testified that ten (10) of the seventeen (17) documents, in Exhibit C of State's Exhibit 3, would never be seen by any customer.

**Conclusions of Law by Hearing Officer**:

After hearing the closing comments of counsel for Staff and the Respondent, the Hearing Officer determined that the date on citation 23151 needed to be corrected by interlineation to be March 15, 2021. Further, the Hearing Officer determined:

1. The three (3) violations of Nevada Administrative Code (NAC) 706.360, alleged in count 1 of citation number 23151, and one (1) violation, alleged in count 1 of citation 22331, occurred.

2. The report by Investigator Schilling, which was admitted as State's Exhibit 1 at the very beginning of the hearing without objection from Respondent's counsel, established substantial evidence the violation occurred on March 15, 2021. The Salt Lake Express vehicle was at the Sparks Bus Terminal. There was one person on the vehicle. The fact that the person was Gregory Hendricks, a supervisor employed at Salt Lake Express, did not impact the conclusion that the Respondent violated NAC 706.360. Mr. Hendricks had been told by Compliance Chief Rene Revens on March 15, 2021, the same day the vehicle was at the Sparks Bus terminal, that the Respondent did not have the proper authority to provide the intrastate transportation it intended to provide. Even though Mr. Hendricks had been informed of this fact, he asserted the Respondent was providing interstate transportation without any substantiating evidence of this fact. Therefore, the State established, by substantial evidence, the single violation of NAC 706.360 alleged in count 1 of citation 23151.

3. The State established, through the testimony of Supervisory Investigator Teti, substantial evidence that the Respondent was going to provide point to point transportation within the state of Nevada on March 16, 2021 and had charged a per capita fee for the transportation. Supervisory Investigator Teti spoke with the vehicle driver who stated he was taking the three passengers, from McCarran airport, and the one passenger, to be picked up Pahrump, Nevada to Reno, Nevada.

Supervisory Investigator Teti testified there were three passengers on the Salt Lake Express vehicle when it was located at the McCarren Airport bus loading area. Supervisory Investigator spoke with each of the three onboard passengers and took photographs of their travel documents which included fare information. This testimony provided substantial evidence the Respondent charged per capita rates for the transportation which was going to be provided to the three passengers. This was not permitted by the charter bus authority given to the Respondent by CPCN 2238. Consequently, three (3) violations of NAC 706.360, alleged in count one of citation 22331, were proven by substantial evidence.

4.  The violation of NAC 706.379, alleged in count 2 of citation 23151, occurred. The State established through the investigator's report, which was admitted as State's Exhibit 1 at the very beginning of the hearing with no objection by Respondent's counsel, the vehicle at the Sparks Bus Terminal had not been placed into service. Salt Lake Express was informed, on March 15, 2021, it could not use that vehicle for charter bus transportation which was the only type of transportation Salt Lake Express was permitted to engage in on that date. Consequently, one violation of NAC 706.379, alleged in count two of citation 23151, was proven by substantial evidence.

5.  The violation of NAC 706.381, alleged in count 2 of citation 22331, occurred. The State established through the testimony of Supervisory Investigator Teti the vehicle, at McCarran Airport in Las Vegas on March 16, 2021, was not part of the Respondent's fleet. Because the vehicle, which had three passengers on it, was not part of the Respondent's fleet, it had not been inspected by the Authority.

6. Consequently, one violation of NAC 706.381, alleged in count 2 of citation 22331, was proven by substantial evidence.

7. The fourteen (14) violations of NAC 706.311, alleged in count 1 of citation 23857, occurred. Investigator Kong testified the documents, contained in Exhibit C of State's Exhibit 3, were the records he received that were relevant to these violations. Investigator Kong testified that because three (3) of the documents were for interstate travel, the citation only alleged fourteen (14) violations of NAC 706.311.

8. Investigator Kong testified that the first intrastate travel, found at p.25 of the report, began at the Las Vegas airport and ended at Hawthorne, Nevada. This travel was three hundred fifteen (315) miles in length. According to Respondent's tariff, found at p.69 of State's Exhibit 3, the amount that could be charged for the three hundred fifteen (315) mile travel was between $74.00 and $79.00. The invoice associated with this travel established the fee paid was $137.23 which included one (1) processing fee, two (2) airport accessing fees and two (2) fuel recovery fees. The Respondent's tariff does not include processing, airport accessing or fuel recovery fees. The tariff only permits charging for the mileage for a one-way fare. After this testimony, counsel for the Respondent stipulated that each of the remaining thirteen documents exhibited the same kind of facts.

9. Additionally, during direct examination, Jacob Price, owner of Salt Lake Express, testified that the carrier actually received $137.23 from this travel.

10. The Hearing Officer viewed, with skepticism, Mr. Price later testimony that he could not determine if Salt Lake Express received the full amount of this fare.

Mr. Price had sufficient time between the issuance of citation 23857, on June 10, 2022, and the hearing, on July 26, 2022, to bring records to the hearing which would establish the fares received by Salt Lake Express for each of the fourteen (14) alleged violations of NAC 706.311; he did not do so. Consequently, fourteen (14) violations of NAC 706.311, alleged in count 1 of citation 23857, were proven by substantial evidence.

11. The fourteen (14) violations of NAC 706.354, alleged in count 2 of citation 23857, occurred. Investigator Kong testified that none of the records, contained in Exhibit C of Exhibit 3, identified the vehicle that would provide the transportation for the fourteen (14) intrastate travel fares provided to Investigator Kong by the Respondent's supervisor – Redian Celaj. After this testimony, counsel for the Respondent stipulated the other thirteen (13) documents did not identify the vehicle which provided the noted transportation. Additionally, Mr. Price testified it would be impossible to identify the vehicle which would provide the transportation when ticketed. Consequently, fourteen (14) violations of NAC 706.354, alleged in count 2 of citation 23858, were proven by substantial evidence.

12. Only seven (7) of the seventeen (17) violations of NAC 706.354, alleged in citation 23858, occurred. Based on the testimony of Mr. Price, ten (10) of the violations were based on documents that would not be seen by the person purchasing transportation from Salt Lake Express. On the other hand, Mr. Price's testimony, the testimony of Investigator Kong and his report, admitted as Exhibit 3 and particularly his Exhibit "C," established the other seven (7) documents were available to and would be seen by a passenger. The CPCN was not included on these documents. The CPCN was not on the website, the passengers would access to obtain these documents.

Counsel for the Respondent stipulated that all the documents did not include the Respondent's CPCN number.   Consequently, seven (7) violations of NAC 706.285, alleged in citation 23858, were proven by substantial evidence.

13. The violation of NAC 706.203, alleged in citation 22939, occurred.  Investigator Kong testified an operational inspection was scheduled to take place on April 21, 2023. While Investigator Kong knew the main Salt Lake Express domicile was in Rexburg, Idaho, he knew the vehicle domicile, for the Respondent, was in St. George, Utah.

14. Prior to the inspection date, Investigator Kong spoke with Gregory Hendricks, an authorized contact for the Respondent and worked at the main Rexburg domicile, who agreed the driver and vehicle maintenance records – necessary for the inspection - would be shipped to the St. George, Utah location.  Mr. Hendricks stated the records would be at the St. George location when Investigator Kong arrived at the vehicle domicile.

15. On April 21, 2022, when Investigator Kong arrived in St. George, Utah, none of the required records were available to be reviewed.   After Investigator Kong arrived, Redian Celaj, another authorized contact of the Respondent, contacted Salt Lake Express in Rexburg, Idaho and the documents were emailed to St. George.  The email process took so long that Investigator Kong was only able to review four (4) driver files in four and one half (4.5) hours.  Based on this fact, the operational inspection was not finalized on this date.  The operational inspection was continued to May 5, 2022.

16. On May 5, 2022, even though the Respondent had over a week to gather the vehicle maintenance files, many required documents were still missing from the files Redian Celaj brought to the Authority's Las Vegas office.

17. Specifically, Investigator Kong testified that in-house generated work orders and third-party repair documents related to work orders were missing from the vehicle maintenance files. The totality of Investigator Kong's testimony, during direct, cross-examination and re-direct questioning, along with his report which was admitted as State's Exhibit 3, established the one violation of NAC 706.203, alleged in citation 22939, was proven by substantial evidence.

18. The Hearing Officer determined that each use of a vehicle beyond the scope of Respondent's authority provided by CPCN 2238, which violated NAC 706.360, would receive a fine of $500.00. However, $250.00 of the fine would be suspended for two (2) years pending no further violations of NRS or NAC 706 and timely payment of the fine.

19. For count 1 of citation 23151, the fine is $500.00 with $250.00 of the fine suspended for two (2) years pending no further violations of NRS or NAC 706 and timely payment of the fine.

20. For count 1 of citation 22331, the fine for each of the three (3) violations is a total of $1,500.00 with $750.00 of the fine suspended for two (2) years pending no further violations of NRS or NAC 706 and timely payment of the fine.

21. For each of the remaining thirty-eight (38) violations, found to exist by substantial evidence and alleged in citations 23151, 22331, 23857, 23858 and 22393, the fine would be $100.00. However, $50.00 of each fine would be suspended pending no further violations of NRS or NAC 706 and timely payment of the fine.

///

///

ORDER

**Based on the forgoing, IT IS ORDERED:**

1. The decisions of the Hearing Officer regarding Administrative Citations and Verified Complaints 23151, 22331, 23857, 23858 and 22939 issued to Western Trails & Charters, dba St. George Express, Salt Lake Express, for the violations of 706.360 (4 counts), NAC 706.379, NAC 706.381, NAC 706.311 (14 counts), NAC 706.354 (14 counts), NAC 706.285 (7 counts) and NAC 706.203 are AFFIRMED.
2. The dismissal of ten (10) counts, of alleged violations of NAC 706.285, in citation 23858 is also AFFIRMED.
3. The *total* fine for Citation 23151 shall be in the amount of Six Hundred Dollars ($600.00) with Three Hundred Dollars ($300.00) of the fine amount suspended pending no further violations of NRS or NAC 706 within two (2) years and timely payment of the fine.
4. The *total* fine for Citation 22331 shall be in the amount of One Thousand Six Hundred Dollars ($1,600.00) with Eight Hundred Dollars ($800.00) of the fine amount suspended pending no further violations of NRS or NAC 706 within two (2) years and timely payment of the fine.
5. The *total* fine for Citation 23857 shall be in the amount of Two Thousand Eight Hundred Dollars ($2,800.00) with One Thousand Four Hundred Dollars ($1,400.00) of the fine amount suspended pending no further violations of NRS or NAC 706 within - two (2) years and timely payment of the fine.

///

6. The *total* fine for Citation 23858 shall be in the amount of Seven Hundred Dollars ($700.00) with Three Hundred Fifty Dollars ($350.00) of the fine amount suspended pending no further violations of NRS or NAC 706 within two (2) years and timely payment of the fine.

7. The *total* fine for Citation 22939 shall be in the amount of One Hundred Dollars ($100.00) with Fifty Dollars ($50.00) of the fine amount suspended pending no further violations of NRS or NAC 706 within two (2) years and timely payment of the fine.

8. The Authority retains jurisdiction to correct any errors that may have occurred in the drafting or issuance of this Order.

By the Authority,

Chairman Vaughn Hartung

Dawn Gibbons, Commissioner

R. David Groover, Commissioner

Attest: Jennifer De Rose, Deputy Commissioner

Dated : 5/26/2023
Las Vegas, Nevada

NOTICE: Pursuant to NRS 233B.130, any party to this matter aggrieved by the above final decision may file a petition for rehearing or reconsideration. A petition for rehearing or reconsideration must be filed with the Authority within 15 days after the date the party received this Order.

///

NOTICE: In accordance with NAC 706.229 and NAC 706.3751 (both recently amended, see Legislative Counsel Bureau File No. R111-10), you may be disqualified from driving taxicabs (outside of Clark County) or charter limousines (statewide) if you fail to pay a fine owed to the Authority, you fail to appear for a hearing on an administrative citation, and/or you are found in violation of the provisions of NRS 706 or NAC 706 more than five times within three years.

NOTICE: Pursuant to NRS 706.772 and NRS 706 483.441, you may have your driver's license suspended by the Nevada Department of Motor Vehicles if you fail to pay the full amount of the administrative fine and any other costs which are due to the Authority as a result of the above final Order.

# EXHIBIT "2"

NTA 0030



SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Salt Lake Express
785 S. Railroad Ave.
Rexburg, ID 83440

9590 9402 7472 2055 1241 68

2. Article Number (Transfer from service label)

7020 1290 0000 0988 9072

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X [signature] ☒ Agent ☐ Addressee

B. Received by (Printed Name): Katrina Luthy
C. Date of Delivery: 4/3/23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED
APR 11 2023
Nevada Transportation Authority

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# EXHIBIT "3"

NTA 0032

BEFORE THE NEVADA TRANSPORTATION AUTHORITY

| Western Trails Charters & Tours, LLC dba St. George Express, Salt Lake Express CPCN 1144 | ) ) ) | Docket no. 23-05017 |
|---|---|---|

**EMERGENCY ORDER OF SUMMARY SUSPENSION**

Western Trails Charters & Tours, LLC dba St. George Express, Salt Lake Express (referred to as Salt Lake Express) is operating pursuant to the Interim Temporary Authority associated with Certificate of Public Convenience and Necessity (CPCN) No. 1144 which was issued on March 18, 2021. Salt Lake Express was authorized to operate as a passenger carrier to provide special services including regular and irregular routes and airport transfer service within the State of Nevada. This provision of transportation is limitedto seven (7) livery limousines. As a fully regulated carrier, Salt Lake Express is required to abide by all relevant NRS 706 sections NAC 706 sections.

NAC section 706.381 requires an inspection of any vehicle a carrier will operate to provide passenger transportation. The regulation specifies:

> Before placing a new vehicle into service, the carrier **must** notify the Authority in writing and make the vehicle available for inspection by an authorized employee of the Authority. Before placing a newly acquired by previously owned vehicle into service, the carrier must notify the Authority in writing and the vehicle must pass an inspection by an authorized employee of the Authority.

NAC section 706.13775.2 precludes a fully regulated carrier of passengers from allowing "a person to drive a motor vehicle … unless the person has a valid driver's permit issued by the Authority."

NAC 706.2473 incorporates relevant federal safety regulations. 49 CFR section 382.305 requires employers to comply with all requirements of the regulation and mandates every driver shall submit random alcohol and controlled substance testing as set out in the regulation. 49 CFR 382.305(j)(2) permits the carrier to use a service agent to perform (1) the random selection of

drivers for the alcohol and drug testing and (2) the required testing.   Nevada has adopted 49 CFR 382.305.

NAC 706.194 mandates that no agent or representative of a carrier "may interfere with, refuse, deny or hinder the Authority or its appointed representatives from making any inspection, investigation or examination of any carrier's vehicle, record or documents."

Pursuant to NRS 233B.127, the Authority finds the following facts:

1. On March 16, 2023 at approximately 2:45 p.m., NTA Investigators Craig Arnett and Adam Truitt were at the Reno Tahoe International Airport.   They observed a vehicle with the markings of "Salt Lake Express" parked in the TNC pick-up area.   After verifying that Salt Lake Express had interim special services and airport authority pursuant to CPCN 1144, Investigator Arnett spoke with the driver of the vehicle – Sherry Blades - which exhibited #432 but did not exhibit the carrier's CPCN number.

2. Ms. Blades informed Investigator Arnett that she was traveling to Tonopah and then on to Las Vegas.   As there were passengers in the vehicle, Investigator Arnett did not impede the transportation but took photographs of the vehicle and the Idaho license plate, KZ2469, on the vehicle.

3. On March 17, 2023, Investigator Arnett reviewed the NTA maintained database regarding Salt Lake Express.   The Salt Lake Express fleet list did not include vehicle #432.

4. When a carrier wants to add a vehicle to its fleet list, it must inform the NTA, in writing, that it wished to add a specific vehicle to its fleet and then schedule a time for the vehicle to be inspected by an employee at the NTA.   The fact that the vehicle #432 was not part of Salt Lake Express' fleet list meant it had not been inspected by a NTA employee.

5. Investigator Arnett then called two of Salt Lake Express' authorized contacts: Gregory Hendricks (supervisor) and Jacob Price (owner). Investigator Arnett was not able to speak with either of the men and left voice messages for each.

6. Investigator Arnett then researched Sherry Blades, the driver of vehicle #432, in the NTA driver permit database. Investigator Arnett located a driver permit for Ms. Blades when she worked for Expeditors by Lindale which expired on March 25, 2022. Investigator Arnett could not locate a driver permit for Ms. Blades associated with her employment by Salt Lake Express.

7. After receiving no response from either supervisor Hendricks or owner Price, Investigator Arnett sent an email to James Glass requesting the driver file for Sherry Blades including the NTA driver permit, medical card, application for employment and copy of a drivers license. Investigator Arnett also request the paperwork for vehicle #432 bearing Idaho license plate KZ 2469 establishing it was added to Salt Lake Express' fleet. Investigator Arnett also instructed the carrier to update its authorized contact list and driver list.

8. Shortly thereafter, Investigator Arnett received all of the documents that he requested from the driver file for Sherry Blades. He did not receive any documentation establishing that vehicle #432 had been added to the carrier's fleet.

9. On March 24, 2023, Investigator Arnett sent an email to Hollie Ivie requesting Sherry Blades' pre-employment drug test and results. He did not receive these documents.

10. On March 24, 2023, Investigators Arnett and Truitt interviewed Sherry Blades who stated she did not know that she needed to have a driver permit to drive for Salt Lake Express. Ms. Blades stated she had been driving for Salt Lake Express since November 2022 and had taken a drug test. However, Ms. Blades stated she had not completed a

NTA driver permit application or prepare a DPS Fingerprint Waiver for Salt Lake Express. Ms. Blades also stated she had driven vehicle #432 on March 23, 2023 and was scheduled to pickup a passenger at the Reno Tahoe International Airport later this date.

11. Later on March 24, 2023, Investigators Arnett and Truitt traveled to the Nugget Casino in Sparks, Nevada where Salt Lake Express stores their vehicles. The investigators found three (3) Salt Lake Express vehicles parked at the Nugget Casino. Investigator Arnett called the NTA office in order to determine whether the two previously unknown vehicles were part of the Salt Lake Express fleet. After further investigation, it was determined that one of the two vehicles, bearing the numbers 456, was also not part of the fleet and had not been inspected by the NTA.

12. Sherry Blades arrived at the Nugget Casino and loaded her belongings into vehicle #432.

13. Investigator Arnett told he she would not drive the vehicle because it was being removed from service.

14. Investigator Arnett also issued Ms. Blades a citation for driving without a NTA driver permit.

15. During the time that Investigators Arnett and Truitt were at the Nugget Casino in Sparks, another person – Andrea Gray - arrived at the Reno NTA office claiming to be a driver for Salt Lake Express who needed to obtain a NTA driver permit. Compliance Audit Investigator Howard Woods reviewed the documents Ms. Gray had in her possession and informed her they need to be corrected.

16. Ms. Gray informed Investigator Wood that she had been driving for Salt Lake Express for approximately one (1) year.

17. On March 27, 2023, Investigator Arnett requested information identifying the drug consortium used for Nevada driver drug and alcohol testing. He again requested a copy of Ms. Blades drug test results. He did not receive these documents.

18. On March 29, 2023, Investigator Arnett issued the following three citations for the noted alleged violations:

    a.  Citation 24760 –

        i.  Count 1 – violation of NAC 706.13775.2 – carrier did allow two drivers to drive without NTA driver permits – TWO COUNTS;

    b.  Citation 24765 –

        i.  Count I – violation of NAC 706.170 – carrier did operate vehicle without CPCN number displayed;

        ii.  Count II – violation of 706.381 – carrier did place vehicle into service without inspection – TWO COUNTS;

    c.  Citation 24766

        i.  Count I – violation of NAC 706.194 – carrier failed to provide drug consortium and drug test results when requested.

19. Citations 24760, 24765 and 24766 were sent by United States Postal Service, certified mail, to Salt Lake Express, 785 S. Railroad Ave., Rexburg, ID 83440. Katrina Luthy signed for the delivery of the citations on 04.03.2023.

20. The three citations gave notice that a hearing would be conducted regarding the alleged violations on April 26, 2023 at 9:00 a.m.

21. On April 26, 2023, no one appeared on behalf of Salt Lake Express at the scheduled hearing.

22. On April 26, 2023, a Notice of In Person Hearing was prepared by Lisa Stewart, a legal secretary with the NTA. The Notice, prominently set out the new hearing date of May 10, 2023 which would commence at 9:00 a.m. This Notice was placed in the United States mail on April 27, 2023 and was addressed to Salt Lake Express, 785 S. Railroad Ave. Rexburg, ID 83440.

23. The citation hearing was noticed to begin at 9:00 a.m. The hearing was called at approximately 11:15 a.m. No one appeared, on behalf of the carrier, at the May 10, 2023 hearing on the citations.

24. Testimony was adduced which: (1) established the above facts regarding the alleged violations; and (2) established service of the citations and later Notice of In Person Hearing.

25. After the testimony was completed, the hearing officer reviewed the Investigative Report which was admitted as State's Exhibit 1.

26. The hearing officer found that the alleged violations had occurred, the state had established these violations through testimony, the report and attached exhibits and substantial evidence existed that the violations occurred.

**CONCLUSIONS OF LAW**

27. The violations of NAC 706.13775.2, NAC 706.381 and NAC 706.194 are serious and significant safety violations

**EMERGENCY ORDER OF SUMMARY SUSPENSION OF CARRIER'S LICENSE/CPCN**

All of the above noted facts and specifically the multiple safety violations establish that the public health, safety and welfare of the citizens of Reno, Washoe County, Nevada and the citizens living in other parts of Nevada where Salt Lake Express provides transportation are imperiled if

Western Trails Charters & Tours, LLC dba St. George Express, Salt Lake Express is permitted to continue to operate at this time. Therefore,

IT IS ORDERED that CPCN 1144 issued to Western Trails Charters & Tours, LLC dba St. George Express, Salt Lake Express is summarily suspended and will remain suspended until:

1. the two (2) vehicles (#432 and $#456) are inspected by an authorized employee of the NTA and all of the requested documents are provided to Inspector Arnett; and,
2. The completion of a hearing on May 18, 2023 beginning at 2:00 p.m. regarding this Emergency Suspension Order.
3. If the carrier and/or its representative is unable to attend this hearing, a new hearing date and time will be set but this Order will remain in force until the hearing is completed.

By the Authority,

Vaughn Hartung
Chairman of the Authority

Dated: May 10, 2023
Las Vegas, Nevada

# EXHIBIT "4"

NTA 0040

STATE OF NEVADA

# DEPARTMENT OF BUSINESS & INDUSTRY

**NEVADA TRANSPORTATION AUTHORITY**
ENFORCEMENT DIVISION

## INVESTIGATION REPORT

*(NON-CERTIFICATED CARRIER OPERATING WITHOUT AUTHORITY)*

---

**ADMIN. CITATION NO: 24785**

**IMPOUND NO: I-4555**

**INCIDENT: NRS 706.386 - Services requiring a CPCN**

**NRS – 706.476 - Impound by Authority**

**LOCATION: Greyhound Bus Station - 1421 Victorian Ave, Sparks, NV**

**INVESTIGATOR: C. ARNETT #J-060**

**DATE/TIME: May 17, 2:55 PM**

**RESPONDENT: Western Trails Charter LLC, dba Salt Lake Express**

---

**DETAILS**: On May 15, 2023, while on routine patrol at the Reno International Airport, Investigator ADAM TRUITT and I observed a Western Trails Charter LLC, dba Salt Lake Express vehicle, enter the airport pick-up area. Due to past enforcement dealings with Salt Lake Express, I knew they had their CPCN suspended on May 10, 2023, and should not have been performing transportation within the State of Nevada.

Investigator TRUITT and I contacted the driver, ANDREA GRAY, and asked what destination she was driving her passengers to. GRAY stated she had come from California, so it was ok. I again asked where she was driving her passengers; this time, she said Carlin, Nv. I informed GRAY that Salt Lake Express has a suspension on their CPCN and is not permitted to perform point-to-point transportation within Nevada. GRAY again mentioned driving into California for a pick-up before coming to Reno Airport. There were no passengers in the vehicle from a previous pick-up. Investigator TRUITT asked GRAY when they started going to California prior to coming into the airport. GRAY said the new route began on May 11, 2023. Subsequently, Salt Lake Express had their CPCN suspended the day before on May 10, 2023. Investigator TRUITT asked GRAY where in California they went before coming to the Reno Airport, GRAY stated she drives across the Stateline and turns around in a campground, then returns to Nevada.

While Investigator TRUITT spoke to GRAY, I asked two male passengers waiting to board the Salt Lake vehicle where they were traveling to. One man said Fallon, Nv, and the other said Las Vegas. It is known from past contact and

investigations into Salt Lake Express that they hire local Nevada drivers to drive from the airport to Tonopah and Carlin, Nv. Some passengers end their transportation while others board another Salt Lake Express vehicle and continue to Las Vegas. The local drivers then return to the Reno area where they live.

GRAY asked me to speak to her boss on her cell phone, which I did. The person I talked to, REDIAN CELAJ, claimed the Nevada Transportation Authority (NTA) had no authority over Salt Lake Express performing transportation since they were now working under federal regulations, not those of the State of Nevada. REDIAN said since the vehicle had traveled into California before coming to the airport, it was considered Interstate travel, which the NTA does not regulate. In addition, the NTA has had many non-certificated operators attempt to use Subterfuge (deception by artifice or stratagem to conceal, escape or evade) in order to provide unlawful transportation in the State of Nevada. For example, carriers pick up passengers in the State of Nevada, proceed across the state line into California, and immediately turn around and return to Nevada to proceed with their planned trip. These acts do not change transportation to interstate travel.

Due to the history with Salt Lake Express, and the fact they had just had their CPCN suspended less than a week prior, I called Chief TODD PARK to discuss the incident. I explained to PARK the situation, and the best way to handle it was to allow Salt Lake Express to leave this day, then contact one of the NTA Deputy Attorney Generals to discuss the issue. GRAY stated she would be back at the airport the following day. Chief TODD agreed, so I waited for assurance that an impound was the correct action and allowed Salt Lake Express to proceed with the trip.

May 16, 2023

At around 1:30 PM, I drove by the Reno Nugget Casino parking lot, where Salt Lake Express stores its vehicles. I observed GRAY taking items from her vehicle and loading them into a Salt Lake Express vehicle. I called Investigator TRUITT and informed him of what I had observed. I then drove to Reno Airport to meet Investigator TRUITT and wait to see if Salt Lake Express came to pick up passengers. We waited approximately one (1) hour, but Salt Lake Express did not arrive.

At approximately 2:45 PM, I drove back to the Nugget Casino to see if GRAY had returned. While stopped at a stop light across the street from the Greyhound Bus Station at 1421 Victorian Ave, Sparks, NV, I observed GRAY pulling away from the passenger pick-up area and driving towards the I-80 freeway onramp. I pulled up behind and could see passengers inside the vehicle. Due to the vehicle already being on the road and entering the freeway onramp, I did not conduct a stop of the vehicle.

May 17, 2023

At approximately 8:30 AM, I drove to the Nugget Casino to check the number of Salt Lake Express vehicles parked. While checking the vehicles, I found that someone had taken all but one (1) of the five (5) Out of Service stickers I had placed on vehicle #445 on May 11, 2023. Both vehicles, #442 & #445, had five (5) Out of Service stickers on the front, sides, and rear. (Exhibit A Pictures of

#442 & #445 when out of service applied and removed) As a result, vehicle #442 had five (5) stickers, while vehicle #445 had only one (1).

At approximately 1:30 PM, Investigator TRUITT and I decided to watch Reno Airport and the Greyhound Station to see if Salt Lake Express would perform transportation. I parked at the Greyhound Station while Investigator TRUITT was stationed at the airport. While waiting, I walked inside the terminal and spoke to the Greyhound attendant. She confirmed that Salt Lake Express was picking up multiple passengers from the Greyhound Station around 2:30 PM. I called Investigator TRUITT and informed him that Salt Lake Express was coming to the bus station, and he could come to my location.

While en route to the Greyhound Station, Investigator TRUITT called me and said he was informed that Salt Lake Express was currently picking up a passenger at the airport. Investigator TRUITT said he would return to the airport to attempt to stop the vehicle. However, when Investigator TRUITT arrived at the airport, Salt Lake Express had already left. Investigator TRUITT then went en route to my location at the Greyhound Station.

At approximately 2:30 PM, we observed Salt Lake Express vehicle #446 pull into the Greyhound Station. Investigator TRUITT and I stopped behind the vehicle and walked up to speak to the driver, ADREA GRAY. I asked GRAY where she was driving, and she said Tonopah, Nv. GRAY said this was her normal route and that she was returning home after dropping the passengers in Tonopah. I explained to GRAY that providing transportation from the Airport/Grey Hound Station to Tonopah, Nv, was considered Intrastate travel, and we would have to stop the service.

As Investigator TRUITT began the impound process, I spoke to a few passengers. I talked to three (3) passengers who gave me the following information:

CRYSTAL GREEN - Traveling from Reno to Las Vegas, then leaving Las Vegas at a different time to travel to Missouri. GREEN allowed me to take a picture of her itinerary on her phone. (Exhibit B)

JOSH STEWART - Traveling from Reno and ending in Las Vegas. STEWART allowed me to take a picture of his itinerary on her phone. (Exhibit B)

TELIFERO & DESSIE LAWSON- Traveling from Reno and ending in Hawthorn, Nv. TELIFERO said he and DESSIE live together in Hawthorn, Nv. TELIFERO said they did not have an itinerary to show me but had been given a travel number to show the driver when they boarded. I took a photograph of the number. (Exhibit B)

GRAY approached Investigator TRUITT and me and said her boss wanted to speak to us. Both Investigator TRUITT and I talked to REDIAN about the incident. I again explained to REDIAN, as I had on May 15, 2023, that trips originating in Nevada and ending in Nevada are considered Intrastate travel. Therefore, Salt Lake Express had no authority to offer these services. TRUITT told REDIAN that the vehicle would be impounded by the authority under NRS 706.758, and they could further argue their case at the hearing scheduled for May 18, 2023, @ 1:00 PM.

Around 2:55 PM, Milne Towing Services arrived to transport vehicle #446. I took photographs of vehicle #446 for report purposes. (Exhibit C) GRAY said Salt Lake Express was trying to figure out how to accommodate the passengers best they could. GRAY signed citation #24785 (Exhibit D) for violation of:

NRS 706.386 Persons required to obtain certificate. It is unlawful, except as otherwise provided in NRS 277A.280, 706.446, 706.453 and 706.745, for any:

1. Fully regulated common motor carrier to operate as a carrier of intrastate commerce;

GRAY also signed Impound form I-4555 and the vehicle inventory sheet (Exhibit E). I gave GRAY a copy of the citation to forward to REDIAN. At approximately 3:25 PM, Milne Towing Services finished loading the vehicle and departed. TRUITT and I then left the scene.

End of Rep

---

**PRIOR RECORD(S)**
Attached as Exhibit F

**EXHIBIT(S)**: A – Pictures of vehicle's with Out of Service Stickers
B – Passengers Itinerary
C – Photographs of vehicle #446
D – Citation #24785
E – Inventory sheet/Impound form
F – Prior Records
G – Copy of NRS

[signature] 5-18-23
**Investigator** **Date**
**Nevada Transportation Authority**
Department of Business & Industry

[signature] 5/18/2023
**Approved by** **Date**

NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT A

EXHIBIT A EXHIBIT A EXHIBIT A

5-11-23
#442

SALT LAKE Express

NTA 0046

5-11-23
#442

442
SALT LAKE

NTA 0047

5-11-23
# 442



5-11-23
#442

442
SALT LAKE Express
SPRINTER
2500
Mercedes-Benz
KZ 16310
Henderson
CPCN 1144





442
5-16-23
SALT LAKE
Express

NTA 0050



442
5-16-23
SALT LAKE
USDOT 52400

NTA 0051



442
5-16-23

SALT LAKE

NTA 0052

442
5-16-23
442
SALT LAKE
Express
SPRINTER
2500
Mercedes-Benz
KZ 16310
Henderson
CPCN 1144

445
5-11-23

SALT LAKE Express

NTA 0054

#445
5-11-23

445
SALT LAKE Express
USDOT 624401

NTA 0055



#445
5-11-23
445
SALT LAKE

NTA 0056



445
SALT LAKE
Express
SPRINTER
2500
KZ 16311
Henderson
CPCN 1144

NTA 0057



#445
5-26-23
445
Express

NTA 0058



#445 5-16-23
445
ALT LAKE
Express
WESTERN TRAILS LLC
REXBURG, IDAHO
USDOT 524401

NTA 0059

#445
5-11-23
445
SALT LAKE
Express
SPRINTER
2500
Mercedes-Benz
KZ 16311
Henderson
CPCN 1144

NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT B

EXHIBIT B EXHIBIT B EXHIBIT B

2 of 2 — Josh Stewart
Greyhound
BOOKING NUMBER
307 439 1657
BOARDING PASS
Valid in both print and digital form
Wednesday, May 17, 2023
09:35 AM Sacramento Bus Station
420 Richards Blvd, 95811 Sacramento
Operated by Greyhound Lines
Bus US0870 Greyhound
Direction Reno-Sparks (Greyhound Station)
01:20 PM Reno-Sparks (Greyhound Station)
You have 1 Hrs. 25 Min. for your transfer
02:45 PM Reno-Sparks (Greyhound Station)
1421 Victorian Ave Sparks Nv 89431 Reno
Schedule number of reference is SLE 5211
Bus CUS2562 Salt Lake Express
Direction South Strip
11:05 PM Las Vegas South Strip Transfer Terminal
6675 Gilespie St, 89119 Las Vegas
Adults
Joshuwa Stewart
Seat
3B
1 × Carry-on bag(s)
Stored bag(s)
Additional information
Total price: USD 149.92
Manage My Booking: shop.greyhound.com/rebooking
Real-Time info: greyhound.com/track/order/3074391657
FAQ: greyhound.com/en/help-and-info
Your checklist for your trip
Your departure station



Crystal Green
Route CUS2562
Direction South Strip
Salt Lake Express
2:45 PM
Reno-Sparks (Greyhound Stati...
Victorian Inn
Google
Nugget Casino Resort
Bus boards at Greyhound Bus Stop. CUS066 is operated by
11:05 PM
South Strip
Operated by Greyhound Lines
You have 2hr 30min for your transfer.
LEG 2
Route US0920
Direction Denver (Union Station)
Greyhound
1:35 AM+1
South Strip
Google
Las Vegas Golf Center
Operated by Greyhound Lines
Important information

The same QR code is used for your entire journey
Adults
dessie lawson
telifero lawson
Seat
12A
12B
2 × Carry-on bag(s)
25 lbs· 16.5×12×7 in
2 × Stored bag(s)
50 lbs · 31.5×20×12 in

NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT C

EXHIBIT C EXHIBIT C EXHIBIT C

# ADMINISTRATIVE CITATION AND VERIFIED COMPLAINT

**ISSUED PURSUANT TO NRS 706.771**

No. 24785

STATE OF NEVADA

County of Washoe City of Sparks

Time 2:55 P.M. Day of Week WED Date 5-17- (Month, Day), 2023

Location 1421 Victorian Ave - Greyhound Station

Name ........ Last ........ First ........ Middle

Residence Address ........ Street

........ City ........ State ........ Zip

Operator License No. ........ State ........

D.O.B. ........ Mo. Day Yr. Sex Ht. Wt. Hair Eyes

Company Name Salt Lake Express MV/CPCN ........

Company Address 785 S. Railroad Ave (Street)

Rexburg (City) ID (State) 83440 (Zip)

Vehicle 2020 (Year) Mercedes (Make) Sprinter (Body) Blk. (Color)

Vehicle License KAE 207 (Number) Id. (State) (Year)

Respondent Western Trails Charters LLC DBA Salt Lake Express

**DID THEN AND THERE COMMIT THE FOLLOWING OFFENSES/INFRACTIONS:**

| 1. Violation | NRS/NAC | ☐ CFR |
|---|---|---|
| No CPCN | 706.386 | ☐ Other |

To wit: Did operate a commercial vehicle without a CPCN.

| 2. Violation | NRS/NAC | ☐ CFR |
|---|---|---|
| | | ☐ Other |

To wit:

I certify (or declare) under penalty of perjury under the laws of the State of Nevada that I have grounds/probable cause to believe and do believe that above named respondent committed the above infraction(s) and or violation(s) contrary to law.

| Officer/Complainant's Name | Officer/Complainant's Signature | P No. | Date |
|---|---|---|---|
| C. Hackett | [signature] | S-060 | 5-17-23 |

The potential fine for each of the above violations is up to $10,000. You are hereby notified to appear before the Nevada Transportation Authority at:

☐ **3300 W. Sahara Ave., Suite 200, Las Vegas, Nevada 89102**

☒ **1755 E. Plumb Lane, Suite 229, Reno, Nevada 89502**

on June (Month) 7 (Day), 2023, at 9:00 am pm

Signature [signature]

**I promise to appear at the time and place indicated.**

Carefully review the explanation of rights/responsibility to appear, the consequences of failing to appear and notice of hearing set forth on the reverse side of this citation. ***Signing of this citation constitutes a promise to appear in this matter and is an acknowledgement that you have been advised to carefully review the information contained on the reverse side of this citation. Signing does not constitute an admission of guilt or culpability.***

***Please read back of citation carefully →→***

**WHITE—Complaint; GREEN—Notice to Appear**

(NSPO Rev. 10-19) (O) 2803

# NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT D

EXHIBIT D EXHIBIT D EXHIBIT D



Salt Lake
Express
1.800.356.9796
saltlakeexpress.com
SPRINTER

NTA 0068



446
SALT LAKE
Express
BUS STOP
SPRINTER
2500
CPCN 1144
KA E207

NTA 0069



IDAHO
KA E207

NTA 0070

Emergency Exit

446
AIRBAG

NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT E

EXHIBIT E EXHIBIT E EXHIBIT E

STATE OF NEVADA
TRANSPORTATION AUTHORITY

# VEHICLE INVENTORY REPORT

Date 5/10/2023

Stock No. 23W038917

Impounded ☒ Stored ☐ Recovered ☐

Citation No. 24785 (24782 crossed out)

Impound No. I4555

Description of vehicle: Color BLACK; Year 2020; Make MERCEDES; Model SPRINTER; Lic. No. KAE207; State and Year IDAHO 12/

Vehicle Identification No. W1Z4EGHY7LT037871 Odometer reading

Insurance company PRIME INSURANCE CO Policy Expiration Date 8/1/2023

Legal owner: Name WESTERN TRAILS CHARTERS LLC d/b/a SALT LAKE EXPRESS Address

Registered owner: Name S/A/A Address 785 S RAILROAD AVE REXBURG ID 83440

Has legal owner been notified of action taken? YES

Has registered owner been notified of action taken? YES

If stolen or embezzled, has reporting agency been advised of recovery? N/A

Circumstances surrounding impound, recovery and storage: NO CPCN

Vehicle towed by MILNE TOWING SERVICES Date 5/10/2023 Time 1400 HRS

Vehicle towed from RENO TAHOE INTERNATIONAL AIRPORT

Vehicle stored or impounded at 1700 MARIETTA WAY SPARKS NV 89431

Release conditions NTA HOLD

## VEHICLE INVENTORY

| | Yes | No | | Yes | No | | Condition |
|---|---|---|---|---|---|---|---|
| Cushion (front) | X | | Windshield wiper(s) | X | | L.F. tire | GOOD |
| Cushion (rear) | X | | Spotlight(s) | X | | R.F. tire | |
| Rearview mirror | X | | Foglight(s) | X | | L.R. tire | |
| Sideview mirror | X | | Bumper (front) | X | | R.R. tire | |
| Cigar lighter | | | Bumper (rear) | X | | Spare tire | |
| Radio | X | | Hub caps | X | | Wheels | |
| Clock | X | | Jack | X | | Body, hood | |
| Keys | X | | | | | Grill | |
| Registration | | | | | | Upholstery | |

List property, tools, other items:

[signature] J-060
Signature of officer ordering vehicle stored

[signature]
Signature of owner / driver verifying inventory

[signature]
Signature of garage principal or agent storing vehicle

White—NTA; Canary—Towing Agency

(NSPO Rev. 4-19)

(O) 4025

STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
**NEVADA TRANSPORTATION AUTHORITY**

I 4555

## NOTICE OF HEARING REGARDING IMPOUNDED VEHICLE

Date: 05/10/2023 Reg. Owner Phone: (435) 272-3343

To: WESTERN TRAILS CHARTERS LLC dba SALT LAKE EXPRESS / JACKSON PRIC...

Address: 785 SOUTH RAILROAD AVE REXBURG ID. 83440

The vehicle listed below is registered to you and has been impounded for operating in intrastate commerce without a certificate of public convenience and necessity (CPCN) in the State of Nevada. This is a violation of Nevada Revised Statutes (NRS) 706.386.

Year 2020 Make MERCEDES Model SPRINTER Color BLACK

License Number KAE207 ID VIN W1Z4EGHY7LT037871

Brief summary of facts and circumstances pertaining to the matter under investigation:

On 05/10, 2023 the above-described vehicle was used by ANDREW GRAY (DRIVER)
(Name of person/entity in care, custody, and control of vehicle at impoundment)

in operation as a (circle one): (passenger carrier) / household goods mover / tow car, within the state of Nevada,

without proper authority. Additional information: NO CPCN.

The described vehicle was impounded under the authority of NRS 706.476. In accordance with this statute, a hearing regarding the release of said vehicle from impoundment has been scheduled for the following time, date and location:

1:00 a.m. (p.m) 5/18, 2023 at the office of the Nevada Transportation Authority (NTA) at

___ 3300 W. Sahara Ave., Suite 200, Las Vegas, Nevada 89102 (phone: 702 486-3303)

X 1755 E. Plumb Lane, Suite 229, Reno, Nevada 89502 (phone: 775 688-2800)

In accordance with NRS 706.476, you may obtain possession of your vehicle prior to the hearing date above by posting a $20,000 bond with the Nevada Transportation Authority to ensure your presence at all proceedings held pursuant to this section. During the hearing, you must prove that:

(a) You are the registered owner of the vehicle;
(b) You have a valid CPCN issued by the NTA; and
(c) The vehicle meets all required standards of the NTA.

*If it is found that you are unable to meet the requirements of (b) or (c) above, you may be assessed a fine of up to $5,000 for each violation. The maximum total fine that may be assessed to you for a single impoundment under NRS 706.476 is $10,000. In accordance with NRS 706.746(3), all fines must be paid prior to your receiving a written release for the described vehicle. If the impoundment of the described vehicle is found to be proper, you are responsible for all towing and storage costs relating to the impoundment.*

You have the right to be represented by counsel during all phases of the proceedings. If you are unable to attend, the hearing will be rescheduled upon receipt of your written request.

Notice of Hearing Regarding Impounded Vehicle issued by Officer C. ARNETT #.

Receipt is hereby acknowledged this 10TH day of MAY, 2023.

[signature]
Respondent's Signature

Andrew Gray
Respondent's Printed Name

DRIVER
Respondent's Position

MILNE TOWING
Tow Company

(Rev. 10-2014)

**(Original – NTA; Copy - Respondent);**

(NSPO Rev. 6-20) (O) 2133

NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT F

EXHIBIT F

EXHIBIT F

EXHIBIT F

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
| --- | --- | --- |
| **1144** | **Salt Lake Express** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing 5/10 9am**
**Rescheduled hearing 5/31 9am (1 cont.) ls**

**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
| --- | --- | --- | --- |
| **24779** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
| --- | --- | --- |
| | **24779** | |

| Impound Number | Citation Dated |
| --- | --- |
| | **4/21/2023** |

Details of Violation/ Application/ Complaint

**NAC 706.13725.2**
**Prohibition against driving without permit**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
| --- | --- | --- | --- |
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Salt Lake Express** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing 4/26 9am ls**
**Rescheduled hearing 5/10 9am ls**
**Related citation 24760 24765**

**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **24766** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **24766** | |

| Impound Number | Citation Dated |
|---|---|
| | **3/29/2023** |

Details of Violation/ Application/ Complaint

**NAC 706.194**
**Interference with inspection**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| 1144 | Salt Lake Express | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing 4/26 9am ls**
**Rescheduled hearing 5/10 9am (1 cont.) ls**
**Related citation 24760 24766**

**Fleet #'s 432 & 456**

**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| 24765 | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | 24765 | |

| Impound Number | Citation Dated |
|---|---|
| | 3/29/2023 |

Details of Violation/ Application/ Complaint

**NAC 706.170**
**Identification of vehicle**

**NAC 706.381 (2 counts)**
**Inspection of vehicle by authority**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| Violation of NAC(s) and/or NRS(s) | | | |

Disposition Notes

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Salt Lake Express** | |

**Principal's Position in Investigation**

**Respondent**

**Investigator's Notes**

**Citation hearing 4/26 9am ls**
**Rescheduled hearing 5/10 9am (1 cont.) ls**
**Related citation 24765 24766**

**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **24760** | | | |

**Held in Abeyance Until**

**Remarks/ Notes**

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **24760** | |

| Impound Number | Citation Dated |
|---|---|
| | **3/29/2023** |

**Details of Violation/ Application/ Complaint**

**NAC 706.13775.2 (2 counts)**
**Prohibition against driving without permit**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | | | |

**Disposition Notes**

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trails Charters & Tours, LLC d** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**citation hearing 12/6/22 9a rmb**

**PO Box 566**
**Rexburg ID 83440**

**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **24541** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **24541** | |

| Impound Number | Citation Dated |
|---|---|
| | **10/24/2022** |

Details of Violation/ Application/ Complaint

**NAC 706.203(4)**
**(2 counts)**
**failure to provide periodic inspection report**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
| --- | --- | --- |
| **1144** | **Western Trails Charters d/b/a Salt Lake** | |

Principal's Position in Investigation
**Respondent**

Investigator's Notes
**Citation hearing date 07/13/2022 1:30 pm jh**
**Rescheduled hearing date 07/26/22 2:00 pm jh**
**Related Citations 23857 23858**
**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
| --- | --- | --- | --- |
| **23858** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
| --- | --- | --- |
| | **23858** | |

| Impound Number | Citation Dated |
| --- | --- |
| | **6/10/2022** |

Details of Violation/ Application/ Complaint
**NRS 706.285 (17 counts)**
**Respondent did fail to have CPCN number on advertisment or invoices for Nevada customers**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
| --- | --- | --- | --- |
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

# Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trails Charters d/b/a Salt Lake** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing date 07/13/2022 1:30 pm jh**
**Rescheduled hearing date 07/26/22 2:00 pm jh**
**Related Citations 23857 23858**
**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **23857** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **23857** | |

| Impound Number | Citation Dated |
|---|---|
| | **6/10/2022** |

Details of Violation/ Application/ Complaint

**NAC 706.311 (14 counts)**
**Respondent did charge & collect for unsubstatiated fees outside of filed tariff**

**NAC 706.354 (14 counts)**
**Respondent did fail to identify equipment to be used on orders for intrastate commerce**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trails Charters d/b/a Salt Lake** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing date 07/13/2022 1:30 pm jh**
**Rescheduled hearing date 07/26/22 2:00 pm jh**
**Related Citations 23857 23858**
**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **23857** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **23857** | |

| Impound Number | Citation Dated |
|---|---|
| | **6/10/2022** |

Details of Violation/ Application/ Complaint

**NAC 706.311 (14 counts)**
**Respondent did charge & collect for unsubstatiated fees outside of filed tariff**

**NAC 706.354 (14 counts)**
**Respondent did fail to identify equipment to be used on orders for intrastate commerce**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
| --- | --- | --- |
| | **Western Trails Charters, LLC d/b/a Salt** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing 6/7/23 9a rmb**
**related impound I-4555**

**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
| --- | --- | --- | --- |
| **24785** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
| --- | --- | --- |
| | **24785** | |

| Impound Number | Citation Dated |
| --- | --- |
| | **5/17/2023** |

Details of Violation/ Application/ Complaint

**NRS 706.386**
**no CPCN**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
| --- | --- | --- | --- |
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

# Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trals Chaters d/b/a Salt Lake E** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing date 07/13/2022 1:30pm jh**
**Rescheduled hearing date 07/26/22 2:00 pm jh**
**785 S Railroad Ave**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **22939** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **22939** | |

| Impound Number | Citation Dated |
|---|---|
| | **5/5/2022** |

Details of Violation/ Application/ Complaint

**NAC 706.203**
**Respondent did fail to maintain proper records for vehicle maintenance files**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | | | |

Disposition Notes

Exit

# Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trails Charters & Tours LLC d/** | |

Principal's Position in Investigation

**Principal**

Investigator's Notes

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **OI-2206-04** | | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | | |

| Impound Number | Citation Dated |
|---|---|
| | |

Details of Violation/ Application/ Complaint

**Citation 22939**
**Citation 23857**
**Citation 23858**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Operational Inspection (On-Site)** | **Citation issued** | | **6 /27/2022** |

Disposition Notes

**Deficiencies found**

Exit | Print Record

## Result of Priors Search (By Prin)

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trails Charters & Tours LLC d/** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing date 04/05/2022 9:00 am jh**
**Related Citation 23729 23730**
**PO Box 566**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **23729** | **$300.00** | **1 /3 /2023** | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **23729** | |

| Impound Number | Citation Dated |
|---|---|
| | **3/14/2022** |

Details of Violation/ Application/ Complaint

**NAC 706.203(4)**
**Respondent did not provide the Authority with a periodic inspection report in a timely manner**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | **Fined** | | **9 /22/2022** |

Disposition Notes

**Total fine $300**

**01/03/2023 paid $300 receipt 46508**

Exit

## Result of Priors Search (By Prin)

Print Record

| Certificate | Principal/ Respondent/ Applicant | Associated Company or Driver |
|---|---|---|
| **1144** | **Western Trails Charters & Tours, LLC d** | |

Principal's Position in Investigation

**Respondent**

Investigator's Notes

**Citation hearing date 09/20/22 9:00 am jh**
**Rescheduled hearing date 10/12/22 8:30 am jh**
**Rescheduled hearing 11/2/22 8:30 rmb**

**PO Box 566**
**Rexburg ID 83440**

| Investigation Number | Fine Amount | Date Fine Paid | Amount Held In Abeyance |
|---|---|---|---|
| **23920** | **$400.00** | | |

Held in Abeyance Until

Remarks/ Notes

| Docket Number | Citation Number | Written Warning Number |
|---|---|---|
| | **23920** | |

| Impound Number | Citation Dated |
|---|---|
| | **8/15/2022** |

Details of Violation/ Application/ Complaint

**NRS 706.398**
**Respondent did not file its annual report by the due date**

| Reason for Investigation | Disposition | Date of SA | Date File Closed |
|---|---|---|---|
| **Violation of NAC(s) and/or NRS(s)** | **Fined** | | **2 /17/2023** |

Disposition Notes

**Fined $400**
**Respondent has 30 days from 2/17/23 to submit the required annual report**

# NEVADA TRANSPORTATION AUTHORITY

# EXHIBIT G

EXHIBIT G EXHIBIT G EXHIBIT G

**Impoundment of Certain Vehicles**

**NRS 706.476   Impoundment by Authority of certain vehicles in unauthorized use; notice and hearing; administrative fine.**   Except as otherwise provided in NRS 706.478:

1.   A vehicle used as a taxicab, limousine or other passenger vehicle in passenger service or to provide towing services or the transportation of household goods must be impounded by the Authority if a certificate of public convenience and necessity is required to be issued to authorize its operation but has not been issued to authorize its operation. A hearing must be held by the Authority no later than the conclusion of the second normal business day after impoundment, weekends and holidays excluded. As soon as practicable after impoundment, the Authority shall notify the registered owner of the vehicle:

(a)  That the registered owner of the vehicle may post a bond in the amount of $20,000 to ensure the registered owner's presence at all proceedings held pursuant to this section;

(b)  Of the time set for the hearing; and

(c)  Of the registered owner's right to be represented by counsel during all phases of the proceedings.

2.   The Authority shall hold the vehicle until the registered owner of the vehicle appears and:

(a)  Posts a bond in the amount of $20,000 with the Authority; or

(b)  Proves that:

(1)  The person is the registered owner of the vehicle;

(2)  The person holds a valid certificate of public convenience and necessity, if required; and

(3)  The vehicle meets all required standards of the Authority.

Ê The Authority shall return the vehicle to its registered owner when the owner meets the requirements of paragraph (a) or (b) and pays all costs of impoundment.

3.   If the registered owner is unable to meet the requirements of subparagraph (2) or (3) of paragraph (b) of subsection 2, the Authority may assess an administrative fine against the registered owner for each such violation in the amount of $5,000. The maximum amount of the administrative fine that may be assessed against a registered owner for a single impoundment of the registered owner's vehicle pursuant to this section is $10,000. The Authority shall return the vehicle after any administrative fine imposed pursuant to this subsection and all costs of impoundment have been paid.

(Added to NRS by 1997, 1929; A 1999, 1962; 2009, 24, 632)

**NRS 706.386   Persons required to obtain certificate.** It is unlawful, except as otherwise provided in NRS 277A.280, 706.446, 706.453 and 706.745, for any:

1.   Fully regulated common motor carrier to operate as a carrier of intrastate commerce;

2.   Owner or operator of a charter bus which is not a fully regulated carrier to operate as a carrier of intrastate commerce; or

3.   Operator of a tow car to perform towing services within this State,

➥ without first obtaining a certificate of public convenience and necessity from the Authority.

# EXHIBIT "5"

NTA 0093



(208) 656-8824 Email Us! My Account

Salt Lake Express

Plan a Trip | Pickup Locations | Travel Information | Help and Contact | Group Charters | Careers

# Truckee, CA

Plan your trip now and enjoy the ride

One Way
Round Trip
From...
To...
Leaving on...
1
Adults (13+)
0
Children (2-12)
0
Infants (0-24 mos)
SEARCH

Home / Destinations / California / Truckee, CA

## Pickup/Drop Off Location:

**Truckee River RV & Gas Station**

 10068 Hirschdale Rd, Truckee, CA 96161

Map
Satellite
Boca
Truckee River RV Park
Dwight D. Eisenhower Hwy
80
Tahoe Forest Church
Glenshire Dr
Hinton

NTA 0094

# EXHIBIT "6"

NTA 0095

10068 Hirschdale Rd, Truckee, CA 961
10068 Hirschdale Rd
Building
Directions
Save
Nearby
Send to phone
Share
10068 Hirschdale Rd, Truckee, CA 96161
Suggest an edit on 10068 Hirschdale Rd
Add a missing place
Add your business
Add a label
At this place
Truckee River RV Park
4.2 (316)
RV park
Open · Closes 7 PM
Tributary Whitewater - Truckee River Outpost (Guided Rafting Trips)
4.9 (101)
Restaurants
Hotels
Things to do
Transit
Parking
Pharmacies
ATMs
Tahoe National Forest
Truckee
Floriston
Union Mills
Mystic
Reno
Sparks
Verdi
Mogul
Lake Tahoe
Incline Village
Tahoe City
Carson City
Sierraville
Soda Springs
Layers
Google
NTA 0096